WILLIAM T. WILKINS, Appellant, *v.* WILLIAM P. EARLE and WILLIAM H. EARLE, Respondents.

Innkeepers are still insurers of the safety of the property of their guests, notwithstanding the act of 1855 (chap. 421, p. 774); the only effect of that statute being to so far modify their common law liability that it does not extend to money, jewels or ornaments not deposited in the safe, provided for that purpose, where the innkeeper has complied with the provisions of the act on his part.

The liability is not limited to such an amount of money as may be reasonably necessary for the traveling expenses of the guest, but covers whatever amount may be received and deposited by the innkeeper in the safe.

The plaintiff, being a guest at the defendants' inn, delivered a package, containing $20,000, to a young man in charge of the office, to be deposited in the safe. It was inclosed in a sealed envelope, and the name of the guest was written in pencil on the outside; but no indorsement indicated its contents or value. The notices posted in the rooms of the inn required that valuable packages so deposited should be "properly labelled." The plaintiff was asked what the envelope contained, and replied "money." It was received and placed in the safe, and was subsequently stolen therefrom.—*Held*, that the defendants were liable to the full amount of the moneys so deposited.

The maxim "*falsus in uno, falsus in omnibus*" relates to willful falsehood, and a refusal to charge that "if the plaintiff's relation of material facts is contradicted in one or more important particulars, about which he cannot be deemed simply mistaken, his evidence is not entitled to credit," is not error. In such a case the jury are authorized to discredit the witness; but are not, as a matter of law, required to do so.

Where evidence has been given tending to raise doubts as to the possession by the plaintiff, of the property alleged by him to have been lost, it is no error to receive evidence that similar property was in his possession shortly before the time of such loss. Continuance of possession may fairly be presumed.

(Argued September 27; decided December 29, 1870.)

APPEAL from a judgment of the Superior Court of the city of New York, on the verdict of a jury, with special findings of fact, and exceptions taken at the trial, heard at the General Term, in the first instance.

The plaintiff became the guest of the defendants, at their hotel in the city of New York, on the evening of the 20th of

April, 1863. Soon after his arrival he delivered to the servant of the defendants, who apparently had charge at the office, a sealed envelope containing $20,000, which the plaintiff requested the servant to deposit in a safe kept by the defendants at the office for the safe keeping of money, jewels and valuables belonging to their guests. The package was placed in the safe, which was then locked in the plaintiff's presence. A notice was posted in the room assigned to the plaintiff, that packages of value should be properly labeled and deposited in an iron safe kept at the office for that purpose. A copy of the act, entitled "an act to regulate the liability of hotel keepers," passed in 1855, was also posted in the room.

The servant, on receiving the package, inquired what it contained, and the plaintiff answered "money." No further information as to the contents was asked or given. On the following morning, when the plaintiff called for his package, it could not be found, and has never been returned to him.

The servant, who was within the office the previous evening, rose before the defendants, and obtained from one of them the key of the safe, and was seen to open it and take out some property of the defendants and afterward lock it. The defendant, who had handed him the key, came to the office very soon afterward, but the servant had then absconded; and, although diligent search was made for him by detectives, employed for the purpose, he has not since been seen by the parties, nor have they obtained any information whither he has gone or where he can be found.

At the close of the evidence, the counsel for the defendants moved to dismiss the complaint on the following grounds, viz.:

1st. That the statute did not enlarge, but rather limited, the liability of innkeepers. 2d. That innkeepers were not liable for money only, where a guest had no baggage, but only for the necessary baggage of the guest, and such an amount of money as was reasonable to have with him, having regard to the nature and extent of his journey, for his necessary and

reasonable traveling expenses; that the sum alleged to be lost was not for traveling expenses, for the money for that purpose was in the plaintiff's wallet, and no part of it was lost, nor was any baggage lost, nor anything which, as innkeepers, the defendants were bound to receive with the guest as such. 3d. That the loss was caused by the neglect of the plaintiff himself. 4th. That the plaintiff should himself have deposited the money in the safe. 5th. That the plaintiff had not proved the delivery of the money to any person authorized to receive it in the hotel of the defendants. 6th. That the manner in which the money was delivered, without notice of the large amount, was a disguise of the nature of the package, and a fraud on the defendants.

The motion was denied, and the defendants' counsel excepted.

The counsel for the defendants requested the judge to embody the same propositions in his instructions to the jury, and also to give the following additional instructions, viz.: That if the jury believe the envelope was delivered to the servant, that, as he was not the authorized agent of the defendants for the reception and safe-keeping of money, beyond the mere traveling expenses of a guest, the jury should find for defendants.

The judge did not give any of the said propositions specifically, but, in the course of his charge, adopted some parts thereof only.

The judge directed the jury, in substance, that, if they believed that the plaintiff delivered the package, with the contents claimed by him, to a person in the office of the defendants, authorized to receive it, for safe keeping, they were bound to account for it, and were liable for its value, with interest; that it was immaterial whether the loss occurred by robbery or neglect, or whether it was still in their possession.

The defendants excepted specifically to the direction that they were liable for anything more than necessary or reasonable traveling expenses; also to the direction that the plain-

tiff is entitled to recover the value of the contents of the envelope; also to the refusal to charge on the question of the plaintiff's negligence; and they excepted generally to so much of the charge as is not in accordance with the propositions submitted.

The jury rendered a general verdict for the plaintiff; for $21,649.27.

And, under the directions of the judge, the jury found the following facts, specially, viz. :

1st. That the envelope, with its contents, for whose value their verdict had been given, was forthwith, on its delivery to the person in the defendant's employment, deposited by him in the safe provided by the defendants for the safe-keeping of articles deposited by guests at their hotel, pursuant to the notice affixed by them in such hotel.

2d. That, upon such delivery by the plaintiff, he did not abstain from communicating to the defendants and the person so receiving the same the nature and value of the contents of the envelope with intent to conceal the same.

3d. That the person to whom such envelope and its contents were delivered was authorized by the defendants to receive on their behalf for deposit in the safe provided by them, pursuant to the notice of which copies were affixed throughout their hotel, articles of value received from guests for safe keeping.

4th. That $1,000 was a reasonable sum of money for the traveling expenses of the plaintiff.

The judge ordered the exceptions so taken to be heard at the General Term in the first instance, and the entry of judgment meanwhile to be suspended.

The case was afterward heard at the General Term on the exceptions taken, and the facts so specially found by the jury where the verdict was modified so as to reduce the amount to $1,080.89, being the sum of $1,000 and interest to the day of trial, as if the same had been found by the jury, sustaining the exceptions of the defendants to the refusal to instruct the jury that the plaintiff could recover only his necessary

and reasonable traveling expenses, and overruling all other exceptions taken. The motion of the defendants for a new trial was denied, and judgment for the plaintiff on the verdict so modified, with the costs of the action, was thereupon ordered. Judgment was entered accordingly for the plaintiff for $2,054.56 damages and costs.

The plaintiff appealed from this judgment to the Court of Appeals, but no appeal has been taken by the defendants.

The case below is reported in 3 Robertson, 352.

*George W. Parsons,* for the appellant, on the general question of liability, cited 1 Blackstone's Comm., 430; Calye's Case, 8 Coke, 33; 2 Kent's Comm., 893; Story's Comm., 306, § 470; *Kent* v. *Struckard* (2 Barn. & Adolph, 803); *Lane* v. *Cotton* (12 Mod. R., 487); HOLT, Ch. J., *Richmond* v. *Smith* (8 Barn. & Cress., 9); *Kemps* v. *Coughtry* (11 Johns., 107); *Cole* v. *Goodwin* (19 Wend., 269, COWEN, J.); *Piper* v. *Manny* (12 Wend., 2); *Grinnell* v. *Cook* (3 Hill, 485, BRONSON, J.); *McDonald* v. *Edgerton* (5 Barb., 560); *Bennett* v. *Meller* (5 T. R., 273); *Clute* v. *Wiggins* (14 Johns., 175); *Gile* v. *Libbey* (36 Barb., 74); *Berkshire Woolen Co.* v. *Procton* (7 Cush., 417); *Needles* v. *D. D. Howard* (1 E. D. Smith, 54); *Quinton* v. *Courtney* (Hay. N. C., 41); *Dwight* v. *Brewster* (1 Pick., 80); *Taylor* v. *Monnot* (4 Duer, 116); *Stanton* v. *Leland* (4 E. D. Smith, 88, INGRAHAM, DALY, WOODRUFF, JJ.); *Van Wyck* v. *Howard* (12 How. Pr., 147); *Burrows* v. *Trieber* (21 Maryland, 320); *Shaw* v. *Perry* (31 Maine, 478); *Sibley* v. *Aldrich* (33 N. H., 553); *Hulitt* v. *Swift* (33 N. Y., 573).

That evidence of possession of similar money to a large amount, previous to the loss, was properly admitted, he cited *Myer* v. *Ludwig* (1 Penn. St., 47); *Trull* v. *True* (33 Maine, 3 Red., 367); *Townshend* v. *Townshend* (6 Md., 296, 1854); *Scammon* v. *Scammon* (8 Porter, N. H., 419); *Dennis* v. *Brewster* (7 Gray, Mass., 351); *Tucker* v. *Peaslee* (36 Fogg, N. H., 10); *Ashmead* v. *Colby* (26 Conn., 287); *Fitch* v. *Brockman* (3 Cal., 348); *Horton* v. *Reynolds* (8 Texas, 284);

*Gordon* v. *Bowers* (16 Penn., 4 Harris, 226); *Sheldon* v. *Hudson R. R. Co.* (4 Kern., 14 N. Y., 218); *Barker* v. *N. Y. Central R. R. Co.* (24 N. Y. R., 599); 1 Phil. Ev., 739; *Holt* v. *Crume* (Litt. Sel. Cas., 499, 500); *Arnold* v. *Goir* (1 Rawl. Penn., 223, 225); *Martin* v. *Maverick* (1 McCord, 24); *Richmond* v. *Vanalborough* (5 Greenlf., Maine R., 396); *Norris* v. *Badger* (6 Cow., 449); *Prindle* v. *Glover* (4 Conn., 142 and 79, 94); *Caldwell* v. *Murphy* (1 Kern., 416).

*Francis Kernan,* for the respondent, as to the extent of the liability, cited *McDonald* v. *Edgarton* (5 Barb., 560); *Bennett* v. *Miller* (5 T. R., 273); 2 Kent's Comm., 593–4; *Mason* v. *Thompson* (9 Pick., 280); Form of Writ, Fitz. N. B., 94; Edwards on Bailments, App., pp. 620, 414, 403, 408; *Orange County Bank* v. *Brown* (9 Wend., 114, 585); Jones on Bailments, 956, 103; *Law* v. *Cotton* (1 Vin. Abr., 219); *Thompson* v. *Lacy* (3 Barn. & Ald., 283); Bacon's Abr., Inns, etc., C., 1, 3; 1 C. & W., 404; *Rex* v. *Luellin* (12 Mad., 445); *Rex* v. *Jones* (7 C. & P., 213); *Fell* v. *Wright* (8 M. & W., 276); *Burgess* v. *Clements* (4 M. & S., 306); *Broadwood* v. *Granara* (10 Exch., 417); S. C., 24 L. J., Exch., 1; S. C., 1 Jurist N. S., 19; Year Book, 5th ed., 4, Easter T., Pl., 20; Keilway Rep., 50; Dyer, 158, *b.*; *Pope* v. *Hall* (14 La. Ann. R., 324); *McDaniels* v. *Robinson* (28 Vermont, 387); *Pettigrew* v. *Barrow* (11 Maryland, 434, 449, 450); *Martin* v. *Brown* (1 Cal. R., 225); *Giles* v. *Fauntleroy* (13 Maryland, 126); *Taylor* v. *Monnott* (4 Duer, 116); 1 Parson's Cont., 629; *Kent* v. *Schursard* (2 B. & A., 805); *Pardee* v. *Drew* (25 W. R., 458); *Hawkins* v. *Hoffman* (6 Hill, 586); *Nerdeymer* v. *Loescher* (1 Hilt., 499); *Bell* v. *Drew* (4 E. D. Smith, 59); *Duffy* v. *Thompson* (id., 178); *McCormick* v. *Hudson R. R. Co.* (id., 181); *Richards* v. *Weitcott* (2 Bos., 589); *Jordan* v. *Fall River Railroad Co.* (5 Cush., 69).

The question of negligence on the part of plaintiff should have been submitted to the jury. (*Benton* v. *Donovan,* 4 B. & Ald., 21; *Bradley* v. *Waterhouse,* 3 C. & P., 319;

*Burgess* v. *Clements*, 4 M. & S., 306; 1 Starkie's R., 249.)

As to the refusal to charge that the jury should discredit the plaintiff, he cited *Forsyth* v. *Clark* (3 W. R., 637, 643); *People* v. *Davis* (16 id., 602, 607).

That it was error to receive evidence of the possession of money by the plaintiff at previous times, he cited *Jackson* v. *Etz* (5 Cow., 314); *Colt* v. *People* (1 Parker, 611); *People* v. *Hulse* (3 Hill, 309); *People* v. *Gay* (3 Seld., 378); *Fowler* v. *Arctic Ins. Co.* (6 Cow., 673); *Starks* v. *People* (5 Denio, 106).

LEONARD, C. An innkeeper is an insurer of the safety of the property of his guest, brought *infra hospitium*. He is liable for its loss, whether by burglary, theft, fire or negligence, unless it arises from the neglect or misconduct of the guest, the act of God or the public enemies. His liability extends to wearing apparel, jewelry, money, and even to the horses, wheat, butter and other articles of bulk belonging to the guest, if received by the innkeeper into his care and within his place of entertainment. This is the rule of the common-law, enforced in the days of Lord COKE, and long prior, and ever since, as well in England as in this State. (*Hulett* v. *Swift*, 33 N. Y. R., 371, and numerous cases there referred to.) The rule is severe, but not unjust, as considered with reference to the rights of the guest as well as the landlord. The landlord can and does fix his compensation for entertainment furnished and risks encountered. The guest must accept his terms, or seek another inn. The landlord employs and controls the servants. He is secured in the payment of his charges by a lien on the property of his guest within his premises, which he may detain for his board and lodging. If a loss occur, the guest can seldom obtain any proof in respect to the manner of it. The servants are interested for their employer, and unless their care will preserve him from loss they are indifferent to the interests of the guest. The liability of the landlord protects the guest and his property when asleep or temporarily absent.

The character of our hotel-keepers of the present day, in localities where gentlemen and ladies resort who can afford to pay liberal prices for their entertainment, is above any suspicion of complicity with their servants or others to betray the confidence of their guests. The rule of public policy does not, however, admit of any just relaxation. Robbery and theft still occur, as in the present case, from the depravity of servants, even at the most fashionable and first-class hotels. Nor can a different rule be held for inns or hotels of the class referred to, and those which offer entertainment for the traveler in less refined circumstances or situations. The rule must be uniform, and applicable to protect the rights of the guest whose narrow means compel him to resort to an inn of a different class from that kept by the defendants.

There are many reasons of public policy which forbid the rule applicable to common carriers from being incorporated into the law affecting inn or hotel-keepers, limiting the liability for the loss of money to sums necessary for traveling expenses. Some of them are referred to above, and others are mentioned in *Hulett* v. *Swift* (*supra*). The innkeeper in that case was held to be bound to prove that the loss of the goods of his guest by fire did not occur by his negligence; that is, he was liable for the loss, unless he could prove that the fire was the act of God, or occurring from some cause not within his control. It was there said that "the considerations of public policy in which the rule had its origin, forbid any relaxation of its rigor."

The rigorous rule of the common law has been to some extent modified in this State by statute. The proprietor of a hotel may now provide a safe, to be kept at the office, and notify his guests of the fact, and that they may deposit their money, jewels or ornaments therein, by posting a notice in the room of the guest; and his neglect to deposit such articles, relieves the proprietor from liability for loss. (Sess L., 1855, ch. 421, p. 774.)

The defendants fully complied with this law. They provided an iron safe which was kept at the office, and posted

the notices thereof conspicuously, as the law required.   The plaintiff, on his part, complied with the condition which the law imposed on him, if he desired to continue the liability of the landlord.   He delivered his money, which he had previously carried upon his person, put up in a sealed envelope, with his name written thereon, to a servant in the office, who had access to the key of the safe, and appeared to be in a position of confidence with his employers.   On inquiry, the plaintiff stated that the package contained money.   No further question was asked.   No objection was made to the sufficiency of the label or mark.   He saw the servant open the safe and deposit therein his package.

The defendants, acting under the provisions of the statute, invited the plaintiff to repose in them a confidence, which by the rules of the common-law he was not required to do, in order to enjoy the protection of their responsibility.   The defendants were thus in possession, and secure against any loss as to the package, or its contents, if they exercised due vigilance.   Certainly, they must see to it, that the key should be intrusted only to safe hands.   They had taken from the plaintiff every opportunity for care or vigilance on his part. They had received him as a guest, and had received his money for safe-keeping, without any objection.   Clearly, their liability for the loss of the money became then as great as it was at common-law, and before the act of 1855.   Greater liability is not necessary for the plaintiff's case, nor need greater be stated.

If the act of 1855 has had any effect upon the nature of the liability of the proprietor of a hotel, it is to create him a special bailee, by an implied contract, to safely keep and return, when he receives the money, jewels etc., of his guest for deposit in his iron safe.   The proof then rests upon him to establish, that the loss occurred by the act of God, public enemies, or the neglect or misconduct of the owner.   He is relieved from guarding the money and valuables belonging to the occupants of 250 rooms of his large hotel; a liability of great and uncertain dimensions, which is reduced by this

act to the vigilance and scrutiny required as to the custody of the key, and the right delivery of the various parcels.

The defendants have no cause of complaint against the plaintiff, as to the manner of the deposit. He answered every question asked of him to the satisfaction of the agent, to whom the defendants intrusted the receipt of the package. The agent did not ask him how much money the package contained, nor to put any other label on it than the name of the owner, which had been already indorsed. The defendants having received the package without any objection in these respects, and having placed it within the safe, or caused it to be placed there, are estopped from objecting that the plaintiff did not communicate the contents, or properly label the package. Nor can it be said, that the agent was not authorized to receive the package, nor to commit the defendants to any liability, beyond the amount of money required for the traveling expenses of the plaintiff. It does not appear that the defendants ever gave the agent any instructions in this respect, and the jury have found the fact against the defendants, as to the agent's authority specially. If the servant was not authorized, it may well be asked, why was he permitted to be within the office, and to open the iron safe, and deposit a package therein? It was either culpable negligence of the defendants, in permitting the servant to occupy an apparently responsible position in the office, obtain the key, and open the safe, or being voluntarily intrusted with it, was such an act as warranted the belief, that he was authorized by them. Either alternative was quite sufficient to make them chargeable with having conferred the necessary authority on the servant.

It is said that the question of contributing negligence on the part of the plaintiff ought to have been submitted to the jury. Such a defence would be a good one, if it existed, and the inquiry ought to have been submitted if there was any evidence to warrant it. But I am wholly at a loss to discover the slightest evidence to raise the question; nor has the learned counsel for the defendants mentioned any upon his points.

The defendants had the plaintiff's money in their iron safe, under lock and key, and the key in their possession. It is impossible to perceive what contributing negligence of the plaintiff could have reached it. If there was any question of negligence affecting the question of liability, it was that of the defendants in suffering the key of the safe to get into the hands of their dishonest servant on the morning after receiving the package.

A few exceptions of minor importance were taken by the defendants during the trial, which are found upon the points of their counsel, which I will proceed to notice, although the judgment is against the defendants, and no appeal has been taken by them, and, in my opinion, they are not entitled to consideration for that reason.

The judge was asked, at the close of the trial, to instruct the jury, "that if the plaintiff's relation of material facts is contradicted in one or more important particulars, about which he cannot be deemed simply mistaken, his evidence is not entitled to credit." The judge instructed them that they were authorized, in that case, to disbelieve the plaintiff's whole statement, but were not bound to do so.

The request was not correct. The mere fact that his evidence was contradicted, as to any fact or facts, as to which he could not be simply mistaken, was not conclusive as to the falsity of the evidence as to those facts. The jury might have believed the evidence, although contradicted. The jury must believe the evidence to be willfully false, in some particular, before they are authorized to discredit the whole evidence of a witness. This element of falsity is wanting in the request, and the judge might properly have refused to give the direction. What he did say, was as favorable as was authorized by the law.

The plaintiff called three witnesses who proved that they were acquainted with him, and had sold him goods, saw him on the 20th of April, the day of his arrival in the city of New York, and had known him in a business way as a merchant for several years. The evidence was taken under objection

and exception by the defendants. The testimony was not very material, and could not have had any material effect. Perhaps it had the effect of challenging the defendants to make any inquiries they might wish to, concerning the plaintiff and his history, of persons who knew him, he being a stranger from a distant State.

The plaintiff was introduced as a witness on his own behalf, and cross-examined at great length, touching the route traveled by him in coming to New York, his dress, baggage, associates, dealings and business, from which it appeared that he had brought no baggage, and had made no change of his under clothing for several days — circumstances which might lead to doubts in the minds of the jury whether the plaintiff had the amount of money alleged to have been lost. The plaintiff afterward introduced evidence showing that he was in the possession of large sums of the kind of money alleged to have been lost immediately prior to his depositing the lost package with the defendants. An exception was taken to the admission of this evidence. It was admissible to rebut the inferences liable to be drawn from the plaintiff's cross-examination, and it also tended to show that the plaintiff had the money which he alleged that he had lost. It was in issue whether the plaintiff had the money in his possession at the time and place alleged; and the evidence tended to prove the fact.

The defendants sought to prove what had been put into the safe the evening before the alleged loss, and what was seen to be in the safe when examining for the package of the plaintiff; also, what was not in the safe that was there the evening before; all of which was excluded, and the defendants excepted. This evidence was clearly not admissible. No material fact could be established by the evidence sought. Proof that the defendants were not negligent is no defence. (*Piper* v. *Manny*, 21 Wend., 283.)

There is nothing in any of the exceptions available to work a new trial, if they had been brought before this court by an appeal on the part of the defendants. There was a judgment entered against them, from which they might have appealed.

Not having done so, they must be deemed to have waived all exceptions, except those as to which they have prevailed below.

The judgment of the General Term, modifying the verdict of the jury, must be reversed, and judgment entered for the plaintiff for the whole amount of the verdict of the jury, with costs.

HUNT, C. It is established by the verdict, that on the evening of April 20th, 1863, the plaintiff deposited with the agent of the defendant, for safe keeping in his vault, a package of the value of about $21,000; that the person to whom the same was delivered, forthwith deposited the package in the safe provided for that purpose by the defendants pursuant to their notice; that the person to whom the package was delivered, was authorized by the defendant to receive the same on their behalf, for the purpose of deposit in their safe. Upon delivering the package to the clerk in the office, the plaintiff testifies, that he wrote his name upon the same, that the clerk inquired its contents, to which the the plaintiff replied, that it contained money, that without further inquiry, the clerk deposited the same in the safe. The plaintiff then asked for a check or a receipt, to which the clerk replied, that they never gave checks, but required the applicant upon demanding his property, to identify it. The jury found a verdict for the value of the package thus delivered, and which, upon demand the next morning, the defendants failed to return to the plaintiff.

The judge, at the trial, held that under these circumstances, the defendants were responsible, if at all, for the entire value of this package. At the General Term, the court held that the defendants were responsible only to the extent of a reasonable sum for the traveling expenses of the plaintiff. This sum, the jury in response to a special inquiry by the judge at the trial, fixed as the sum of $1,000. Our principal duty is to determine which of these rules is the correct one.

Whether the defendants were bound to receive on deposit so large a sum, is not in question. They did receive it, and

deposited it in their safe, in pursuance of their notice, and the statute by which it was authorized. Whether the label upon the same was a sufficient compliance with their notice, is not before us. The statute makes no mention of a label, and nothing can be more vague than this term as used in their notice. The most general idea of a label is not of a separate strip of paper or parchment, but a written description of the article upon which it is placed or made, as to its ownership, or character, or quality or extent. The name of Mr. Wilkins was a label. It indicated the ownership. The sum of $20,000, if written upon the envelope, would have been a label. It indicated the value of the parcel. A simple indorsement of the word money, or valuables, would have been a label. If the defendants deemed a label important, and wished to raise a question of law upon the sufficiency of the label on this package, they should have made a specific point upon it at the trial, and asked for a ruling there. This they did not do, and the question cannot be made in this court.

The liability of an innkeeper for the goods of his guest, has been settled for centuries. The act of 1855 does not purport to create it nor even to declare it. It assumes the liability. It enacts that whenever the proprietors of an hotel, shall provide a safe in their office for the keeping of money, jewels, or ornaments, belonging to their guests, and shall notify their guests thereof, and a guest shall neglect to deposit his money, jewels or ornaments therein, the proprietor shall not be liable for any loss of the same by his guest. This act assumes that before its passage, the innkeeper was liable for the loss of the money, jewels, or ornaments of his guest. It assumes that he still remains liable, if a deposit is made by the guest of his money or jewels, according to the terms of the act. It neither enlarges or restricts the liability. It leaves it as the common-law fixes it, with the condition as to money and jewels, that if a particular notice is given by the innkeeper, the liability shall not attach unless such money and jewels are deposited in the office safe. In the present case

this notice was given and the condition was complied with. The liability stands therefore as the common-law fixed it.

In support of a rule, which in its general terms is conceded by all, it is not necessary to cite authorities. I will hereafter refer to some of those, which in their facts bear upon the point now in contention.

Is there any basis in principle or in the authorities for the distinction made by the defendant, to wit., that an innkeeper is liable only for such an amount of money as is necessary for the reasonable expenses of the guest? This distinction is sought to be maintained upon the analogy to the case of a carrier of passengers, who is liable only for money or articles convenient to the traveler on his journey, and not for goods or merchandise as such. I will cite a few among the many cases reported in the English courts, as well as in those of this State, to show that this distinction cannot be maintained. I think it will appear that the innkeeper is liable to the guest for the value of all his property lost, whether it be intended for his personal convenience, or for traffic, or for any other general or permanent purpose.

The law was correctly laid down by Lord COKE in Calge's case, more than 250 years since. (8 Co. Rep., 203, 32*a*.) That case contains an abstract of the law touching the liabilities of innkeepers. "It was resolved *per totam curiam* this term. 1. That if a man comes to a common inn, and delivers his horse to the hostler, and requires him to be put to pasture, which is done accordingly, and the horse is stolen, the innholder shall not answer for it. 2. The words are *eorum bona et catalla infra hospitia,* and because the horse which, at the request of the owner is put to pasture, is not *infra hospitium,* the innholder is not bound by law to answer for him if he be stolen out of the pasture * * but it was holden that if the owner doth not require it, but the innholder, of his own head, puts the guest's horse to grass, he shall answer for him if he be stolen. * * * 5. Although the words *eorum bona et catalla* do not of their proper nature extend to charters and evidences concerning freehold, or inheri-

tance, or obligations, or other deeds or specialties, being things in action, yet in this case it is expounded by the latter words to extend to them; and therefore if one brings a bag or chest, etc., of evidences into the inn as obligations, deeds, or other specialties, and by default of the innkeeper they are taken away, the innkeeper shall answer for them, and the writ shall be *bona catalla* generally, and the declaration shall be special."

In *Bennet* v. *Mellor* (5 T. R., 273) the case was this: The plaintiff's servant had taken a quantity of goods to market to sell. Being unable to dispose of them, he went with them to the defendant's inn, and asked the defendant's wife if he could leave the goods there till the next market day, the week following. She replied that she could not tell, for they were very full of parcels. The servant then sat down, had some liquor, and put the goods on the floor immediately behind him. When he got up, after sitting a little while, the goods were missing. A recovery was had, which, upon a rule to show cause before ASHURST, BULLER and GROSE, JJ., was sustained. It will be observed that the subject here was merchandise, which the servant had taken to market, and which he wished to store until the next market day. It had none of the quality of baggage or of articles of personal convenience.

In *Kent* v. *Shuckard* (2 B. & Ad., 803) the head-note is, "An innkeeper is responsible for money belonging to his guest." The plaintiff and his wife were guests at the defendant's inn. The wife left her reticule, containing money, on her bed. Returning for it in a few minutes, it was gone. The report does not state the amount of the money lost. On the trial it was urged, on behalf of the innkeeper, that he was responsible for goods and chattels only, and not for money. The jury found a verdict for the plaintiff; and on a motion before Lord Chief Justice TENTERDEN and Justices PARKE, TAUNTON and PATTESON, the same point was taken. Andrews, sergeant, urged, that while innkeepers are liable for goods and chattels, "there is no authority to show that they are so for money. If they be, there will be no limit to their

responsibility.    An innkeeper cannot know or form any judgment of the amount of money a guest may have." The court sustained the verdict, holding the innkeeper responsible for the money.

In *Jones* v. *Tyler* (1 Ad. & Ellis) the horse and gig of the guest were taken in charge by the defendant's hostler, who placed the gig in the open street. The gig having been stolen, the innkeeper was held responsible.

*Richmond* v. *Smith* (8 B. & Creswell, 9) was a recovery against the innkeeper, for the value of certain packages of silk which the plaintiff had and exposed for sale. The defence was attempted on the ground that the plaintiff had taken the goods under his own protection in his private room. It was not argued that the circumstance that the goods were articles of merchandise afforded a defence.

Of the same character are the reports in our own State. *Clute* v. *Wiggins* (14 J. R., 175) was this: The plaintiff came to the defendant's inn with a load of wheat and barley, and was received as a guest for the night. The horses were put into the stable, and his sleigh with its contents into a wagon-house, where it was usual for the defendant to receive loads of that description. The next morning it was discovered that the wagon-house had been broken open, and the wheat and barley stolen. The innkeeper made two points: 1. That the goods had not been delivered into his special custody. 2. That he derived no profit from keeping the wheat. The recovery for the value of the grain was sustained.

In *Hallenbake* v. *Fish* (8 Wend., 547), the plaintiff stopped with his horse at the defendant's inn, and upon calling for his horse, his saddle and bridle could not be found. The plaintiff brought trover for the saddle and bridle. The Supreme Court held, that in trover, he must prove an actual conversion, and that a conversion was not sufficiently proved. They say, that upon the facts presented, there could be no doubt that an action on the case upon the custom, would have lain against the defendant.

In *Piper* v. *Many* (21 Wend., 283), the plaintiff, with his horses and a sleigh load of butter, stopped at the defendant's inn. A portion of his butter was stolen during the night. The defendant endeavored to protect himself on the ground, that the butter was not brought within the inn, but was left in the yard. The court held the defendant liable.

So recently as the year 1865, in *Hulet* v. *Swift* (35 N. Y. R., 571), a similar case was presented. The plaintiff's servant, with his horses, wagon, and a load of buckskin goods, stopped for the night at the defendant's inn. A fire occurred during the night, by which the property was destroyed. It did not appear how the fire originated, and there was no evidence of negligence on the part of the defendant. The defendant was held to be responsible.

On the general principle, See also, Story Com., § 480–1; 2 Bl. Com., 430; 2 Kent's Com., 593.

The cases cited, show that the distinction contended for by the defendant's counsel cannot be maintained. I am not aware of a single reported case which sustains it, nor of any elementary writer, who gives countenance to it.

It is true, that the days of violence, which in early times required this protection to the traveler, have passed away. It is not certain, however, that we are less exposed to fraud. We may have grown wiser and better than our fathers. It is to be hoped that we have. It may be, however, a change of manners rather than of morals. The day of the two-handed broad-sword has gone by; that of sleight-of-hand and finesse has come in. A guest is in less danger of being robbed and murdered, but possibly not of being cheated. He is now required to place his money and his valuables in the actual custody of his host, as a condition of a protection for his money and jewels. (Laws 1855.) The law makes no provision for any evidence of this deposit. In the case before us, the clerk declined to give any. He deposits his money, and that is all he knows about it, and he can do nothing toward its protection. May the innkeeper say that he has been robbed, and that he is thereby excused? Who has

robbed him, a stranger or his servant? May he say that the amount is too large? He has ample means of protecting it. If his servants and himself are honest, the money is safe in its deposit. This honesty he is bound to guaranty. The guest is quite in the power of the host, and unless the ancient rule is maintained, the danger to the public will be great. I see nothing in the present condition of society, or modes of doing business, that calls for its relaxation.

The defendants make some minor points, to which I will refer. They say, that if the plaintiff's negligence contributed to the loss, he cannot recover, and that the question of his negligence should have been submitted to the jury. There was nothing upon that point to leave to the jury. If it had been so left, and the jury had found negligence, it would have been the duty of the court to set aside the verdict.

The defendants, again, asked the court to charge, that, if the plaintiff's relation of material facts was contradicted in important particulars about which he could not be mistaken, his evidence was not entitled to credit. This was simply asking the court to usurp the province of the jury, and to hold, as matter of law, that, in a conflict of evidence, the defendants' witnesses were right and the plaintiff was in the wrong. The court very properly charged, that, if the jury believed that the testimony of the plaintiff was contradicted in important particulars by witnesses whose testimony they preferred to his in regard to transactions testified to by both, they were authorized to disbelieve his whole statement. They were not bound, but they were authorized, to do so.

The defendants say, also, that it was error to admit evidence that, at a time anterior to the alleged deposit, and at a place distant, the plaintiff was seen in possession of money and bills corresponding in appearance with the deposit, and to allow the witness to state its probable amount. The evidence of Mitchell was of this character. He testified that, in April, 1863 — the deposit being on the 20th of that month — the plaintiff was at his office in Philadelphia, and while there he saw him take out an envelope containing two French drafts,

drawn by the Citizens' Bank of Louisiana, and a large amount of money, several $1,000 notes and several $100 notes (greenbacks), and that, although he did not count it, he was satisfied that he saw from $12,000 to $15,000. The judge admitted this evidence; and it must be conceded that it was calculated to produce an impression with the jury in the plaintiff's favor. The plaintiff testified that the deposit he made with the defendants' clerk included two French drafts, drawn by the Citizens' Bank of Louisiana on parties in Paris, and that his money consisted, among other items, of a number of government bills (commonly called greenbacks, from their color), of the denomination of $1,000 and of $100.

I think no one would have denied the admissibility of this evidence, if the time and place had been Earle's hotel and April 20th after tea. The plaintiff says that, after tea, at six or seven o'clock on that evening, in the hall near the water closet, he put these securities in a new envelope, and proceeded directly to the office and made the deposit. If some one had seen these drafts and these bills while thus in the course of transfer, and had been able to speak with as much definiteness as to the amount as Mitchell did, I think it would be evidence, although he did not accompany the plaintiff, or have him constantly under his eye, until he made the deposit. To reject it, would evince too much nicety and fastidiousness in applying the rules of law. It is true that the fact that the plaintiff had this money and these securities does not certainly prove that he made the deposit. It is equally true that he could not have made the deposit he testifies to, unless he had them. When you prove, therefore, that shortly before the 20th of April the plaintiff had in his possession the particular drafts which he claims to have deposited, and the particular bills of $1,000 and $100 which he also claims to have deposited, some links in the chain are furnished. Their strength depends upon their nearness and relation to the transaction. (*Kennedy* v. *The People*, 39 N. Y., 245.) If A, at seven o'clock, had seen this envelope and its contents with the plaintiff, and B, at five minutes past seven, had seen him make the deposit,

I think the two could, by the inference of the jury, be connected together, although there was an interval when he was not within the sight of either. There is a legal presumption of continuance. A partnership once established is presumed to continue. Life is presumed to exist. Possession is presumed to continue. The fact that a man was a gambler twenty months since, justifies the presumption that he continues to be one. An adulterous intercourse is presumed to continue. So of ownership and non-residence. ( *Waleod* v. *Ball*, 9 Barb., 271 ; *Cooper* v. *Dedrich*, 22 id., 516 ; *Smith* v. *Smith*, 4 Paige, 432 ; *McMahon* v. *Harrison*, 2 Seld., 443 ; *Sleeper* v. *Van Middleworth*, 4 Denio, 431 ; *Nixon* v. *Palmer*, 10 Barb., 175.) This analogy is fairly applicable to the present case, and justifies the admission of this evidence.

Upon the whole case, I am of the opinion that the order of the General Term, directing judgment for $1,000, be reversed, with costs, and the judgment be entered upon the verdict of the jury, with costs.

All concur.

Judgment reversed, and judgment ordered for the plaintiff for $21,649.27, and interest from the rendition of the verdict.