HARRY L. HART, Plaintiff, *v.* MILLS HOTEL TRUST, Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District,
June 27, 1932.

*Berg & Berk,* for the plaintiff.

*Anderson, Gasser, Ferris & Anderson* [*J. Wesley Seward* of counsel],
for the defendant.

LEWIS, DAVID C., J.   The defendant is the proprietor of a series of hotels operating in the metropolis.

The plaintiff, a workingman, ending his job at a garage in the lower section of the city, left the Mills Hotel (in that vicinity) where he had been stopping, and on or about the 8th day of May, 1931, took room 748 at Mills Hotel, No. 3, at Seventh avenue and Thirty-sixth street, for which he paid on a weekly basis, apparently week by week, in advance.   He occupied this room until June third, on which day he changed to room 754, paying for five days in advance; and he continued the occupant of room 754 on the same weekly basis until June 29, 1931.

It is to be noted that the plaintiff brought no furniture or accessories of his own into the hotel, and, undoubtedly, his only baggage consisted of some wearing apparel and some personal requisites.

When the plaintiff retired on the night of May 29, 1931, he left on a chair in his room the suit of clothes which he was wearing, a belt with a gold buckle attached to his trousers and a Hamilton watch with a gold chain and knife also affixed to his apparel, together with cash in the sum of ninety-seven dollars in the pockets of his trousers. On the morning of May thirtieth, at about five-thirty A. M., he went from his room to the washroom on the floor to shave. He left his clothes, apparently in the same condition in which they were the night previous, on the chair in his room. As he went out, he felt the door to make sure that it was securely closed. Upon returning from the washroom, his clothes and the personal property had all disappeared.

In the plaintiff's room, as in the other rooms of the hotel, the proprietor furnished a steel locker in which the plaintiff might have placed his clothes together with the property contained in them.

The plaintiff seeks to recover against the defendant on the theory that the defendant as the proprietor of an inn is liable as an insurer to the plaintiff, a guest, for the loss of his property.

The defendant disputes any liability on the ground that the relationship was that of landlord and roomer; that the loss was not due to the defendant's negligence and that, at all events, the plaintiff's negligence occasioned the loss.

The defendant would limit its liability to the loss of the clothing under the provisions of section 200 of the General Business Law.

The defendant does not pretend to deny that these premises were conducted by it as a hotel. It asserts, however, that the particular arrangements made by the plaintiff for the occupancy of his room on a weekly basis and the weekly payments in advance and the duration of his stay, coupled with his testimony that he regarded New York city as his residence, made him a roomer and not a guest.

I cannot find proof or precedent warranting such a conclusion. The gist of the decisions indicates a contrary holding. " She moved into her rooms her piano thus indicating more than an intention to make a temporary sojourn. The property which is the subject of this action was not of a character such as is usually taken to hotels by transient guests. * * * I do not mean to say that a resident of Albany may not go to one of the hotels of that city and establish between himself and the hotel-keeper the relation of inn-keeper and guest." (*Crapo* v. *Rockwell*, 48 Misc. 1, 5, 6.)

" It does not appear that the plaintiff bargained to remain for any particular time; although it is true that the agreed price of the room was to be $1.25 per week. But a special agreement fixing in advance the price to be paid, or the length of the stay, does not absolutely disturb the relation of innkeeper and guest, and con-

stitute the person so acting a boarder or lodger. 11 Am. & Eng. Ency. Law, pp. 12, 15. A guest has been defined to be one who ' comes without any bargain for time, remains without one, and may go when he pleases, paying only for the actual entertainment which he receives; and it is not enough to make him a boarder, and not a guest, that he has stayed a long time in the inn in this way.' " (*Metzger* v. *Schnabel*, 23 Misc. 698, 699.)

" The more general modern trend, however, seems to be toward a relaxation of the older rule, so as to give the status of guest to townsmen or neighbors. 14 Ruling Case Law, 495, 496, and cases there cited; and *Walling* v. *Potter*, 35 Conn. 183; *Orchard* v. *Bush & Co.*, L. R. 2 Q. B. D. (1898) 284. The mere fixing of the price does not change the status of one who would otherwise be a guest, into that of boarder or tenant. *Hancock* v. *Rand, supra*, 8." (*Roberts* v. *Case Hotel Co.*, 106 Misc. 481, at p. 485.)

" The authorities hold beyond question that the fixing of the price does not make the party a boarder. (See *Pinkerton* v. *Woodward*, 33 Cal. 557; *Berkshire Woolen Co.* v. *Proctor*, 7 Cush. 417; *Norcross* v. *Norcross*, 53 Me. 169; *Walling* v. *Potter*, 35 Conn. 183.)

" Considering the question discussed it should not be overlooked that the St. Cloud Hotel was kept as a public inn in every sense and was clearly distinguishable from a boarding house; its proprietors did not claim that it was a boarding house, and there is no evidence to show that it was considered in that light, and neither the fixing of the price nor the conversation had in reference to the probability of General Hancock and family remaining a period of time could alter or change its true character." (*Hancock* v. *Rand*, 94 N. Y. 1, at p. 8.)

The fact that the defendant's hotels may cater to the so-called laboring or common man, supplying simple accommodations and comforts, with no claim of pretentiousness, at a price conceived to be within his means, most commendable as it may be, cannot increase the risk of the guest nor diminish the responsibility of the proprietor.

" The character of our hotel-keepers of the present day, in localities where gentlemen and ladies resort who can afford to pay liberal prices for their entertainment, is above any suspicion of complicity with their servants or others to betray the confidence of their guests. The rule of public policy does not, however, admit of any just relaxation. Robbery and theft still occur, as in the present case, from the depravity of servants, even at the most fashionable and first-class hotels. Nor can a different rule be held for inns or hotels of the class referred to, and *those which offer*

*entertainment for the traveler in less refined circumstances or situations.*
The *rule must be* uniform, *and applicable* to protect the rights of
the guest whose *narrow means compel him to resort to an inn of
a different class* from that kept by the defendants." (*Wilkins* v.
*Earle*, 44 N. Y. 172, at p. 179.)

This rule, inherited from the days of the common law, aims at
the protection of the entire public, and no change of modern times
has ever been seized upon to warrant its restriction or abatement.

" The considerations of public policy in which the rule had its
origin, forbid any relaxation of its rigor. The number of travellers
was few, when this custom was established for their protection.
The growth of commerce, and increased facilities of communication,
have so multiplied the class for whose security it was designed,
that its abrogation would be the removal of a safeguard against
fraud, in which almost every citizen has an immediate interest.
The rule is, in the highest degree, remedial. No public interest
would be promoted, by changing the legal effect of the implied
contract between the host and the guest, and relieving the former
from his common-law liability." (*Hulett* v. *Swift*, 33 N. Y. 571,
at p. 573.)

" His liability extends to wearing apparel, jewelry, money, and
even to the horses, wheat, butter and other articles of bulk belonging
to the guest, if received by the innkeeper into his care and within
his place of entertainment." (*Wilkins* v. *Earle*, 44 N. Y. 172,
at p. 178.)

It is conceded that the defendant complied with the requirements
of section 200 of the General Business Law and posted the proper
notices in the rooms. But under this section of the statute the
only claim to immunity that it may enjoy is release from responsi-
bility for the loss of the money and not for the loss of the watch,
chain, knife and clothes, for, as to these, they did not constitute
jewels or ornaments within the meaning of the statute, and, as to
them, the defendant was at all times an insurer.

" In accordance with the construction placed upon the statute
in that case, the innkeeper's liability has been modified only as to
' money, jewels or ornaments,' *and a watch is not a jewel or ornament
within its meaning. By analogy, a chain,* a purse, and a rosary,
being all articles of use, and not worn for ornament, are also not
within the statute." (*Jones* v. *Hotel Latham*, 62 Misc. 620.)

" Certain property, particularly valuable in itself, taking but
small space compared with its value for its safe keeping, easy of
concealment and removal, holding out great temptation to the
dishonest, and not necessary to the comfort or convenience of the
guest while in his room, is made the subject of the statutory

exemption. Property of a different description, including all that which is useful or necessary to the comfort and convenience of the guest, that which is usually carried and worn as a part of the ordinary apparel and outfit, or is ordinarily used, and is convenient for use by travelers as well in as out of their rooms, is left, as before the statute, at the risk of the innkeeper. The words of the statute must be taken in their ordinary sense, in the absence of any indication that they were used, either in a technical sense or a sense other than that in which they are popularly used. *A watch is neither a jewel or ornament,* as these words are used and understood, either in common parlance or by lexicographers. It is not used or carried as a jewel or ornament, but as a time-piece or chronometer, an article of ordinary wear by most travelers of every class, and of daily and hourly use by all. It is as useful and necessary to the guest in his room as out of it, in the night as the daytime. It is carried for use and convenience and not for ornament. But it is enough that it is neither a jewel or ornament in any sense in which these words have ever been used." (*Ramaley* v. *Leland,* 43 N. Y. 539, at pp. 541, 542.) (See, also, *Becker* v. *Warner,* 90 Hun, 187; *Briggs* v. *Todd,* 28 Misc. 208.)

Nor do I believe that the plaintiff was guilty of any negligence occasioning the loss of his property.

Negligence is not constituted of hindsight. It is a matter of foresight. The test is not what happened but, rather, what a reasonably prudent man might under the circumstances expect as likely to happen.

I find, therefore, that the defendant is answerable for the loss of the clothing, the watch, chain and knife.

As to the money, the failure, in view of all the circumstances and conditions, to deposit such a sum of money with the safe in the office of the hotel, as required by the notice, relieves the defendant of its responsibility as an insurer. The testimony saves the defendant from any charge of negligence. Therefore there remains no grounds upon which the defendant can be saddled with liability for the loss of the money.

Judgment for the plaintiff in the sum of ninety dollars.

Ten days' stay.