S. J. LEON, APPELLEE, V. KITCHEN BROTHERS HOTEL COM-
PANY, APPELLANT.
277 N. W. 823
FILED FEBRUARY 22, 1938.   No. 30144.

138

*Finlayson, Burke & McKie,* for appellant.

*Leon & White* and *Louis E. Lipp, contra.*

Heard before Goss, C. J., Rose, Eberly, Paine, Carter and Messmore, JJ., and Eldred, District Judge.

Eldred, District Judge.

This action was instituted by S. J. Leon, appellee and cross-appellant, herein referred to as plaintiff, against Kitchen Brothers Hotel Company, a corporation, appellant and cross-appellee, herein referred to as defendant, to recover the value of personal property alleged to have been lost in the Paxton Hotel in Omaha while the plaintiff and his wife were living at said hotel. The petition alleges that about July 22, 1935, plaintiff and his wife were guests at defendant's Hotel Paxton, occupying rooms 1021-1024. As a first cause of action it is alleged that plaintiff's wife had on her person, as a part of her ordinary wearing apparel and wearing outfit, one lady's Tiffany diamond ring of the value of $498.50, one lady's 14-carat Tiffany wedding ring band of the value of $10, and one lady's platinum diamond wrist watch of the value of $285; that on said date when retiring for the night she removed said articles from her person and placed the same in her purse on a dresser in a sleeping room constituting a part of rooms 1021-1024; and that said articles were missing when she awoke the following morning. Plaintiff alleges that his wife assigned her claim for the loss of said property to him. In the second cause of action plaintiff alleges that he removed $60 from his person on retiring on said date, and placed the same upon the dresser in said sleeping room; and that said money was missing the next morning. As applicable to both causes of action, it is alleged that there were no suitable locks or bolts on the doors of the sleeping rooms used by plaintiff and his wife; and that keys were available to numerous persons other than plaintiff and his wife, contrary to their wishes and without

their consent, and that defendant knew, or should have known, of said facts.

The answer of the defendant admits it operated the Paxton Hotel, and alleges that as a hotel keeper it complied with the provisions of the statutes of Nebraska with reference thereto. It also alleges that plaintiff and his wife failed to deliver said articles to the defendant for safe-keeping; and further denies that plaintiff and his wife were guests, but alleges that they were tenants and lessees, leasing the premises occupied by them from month to month on a monthly rental basis, and denies generally all other allegations. The reply was general denial.

On trial to jury, after the taking of evidence had been completed, plaintiff moved the court that the jury be instructed to return a verdict in his favor in the amount of $840, which motion was overruled and case submitted to the jury. Verdict was returned for defendant. Plaintiff thereupon moved for judgment in the sum of $840, notwithstanding verdict of the jury. Motion was sustained in part, and the court found the plaintiff entitled to recover from defendant for the following items: Wrist watch, $285, wedding ring, $10, and cash, $60, total $355, for which judgment was rendered. Motions of both plaintiff and defendant for a new trial were overruled. Defendant has appealed. Plaintiff has filed cross-appeal.

The first proposition urged by defendant is that judgment notwithstanding the verdict may be rendered only when statements in the pleadings, without the introduction of evidence, require a judgment in favor of one of the parties. Section 20-1315, Comp. St. 1929, and a number of decisions of this court are cited in support of this contention. But this case comes within the exception to this general rule announced in *Netusil v. Novak*, 120 Neb. 751, 235 N. W. 335, where it is said:

"During the trial of a case, the court overruled a motion to direct a verdict for defendant and submitted the case to the jury. The jury returned a verdict for plaintiff and judgment was entered thereon. A motion for new trial

was filed and argued, whereupon, at .the same term, the court, on its own motion, set aside the verdict of the jury and the judgment and dismissed the action. *Held,* that the trial court had the right and power, to vacate, set aside, amend or correct any judgments or orders made by it at the same term."

Defendant urges that an issue for the jury was presented on question of loss of property. While the plaintiff seeks to apply the rule that, when an allegation is supported by competent testimony, which is uncontroverted and uncontradicted, it is error to submit the same to the jury as a question for their determination. The rule urged by plaintiff is to be followed when the facts justify its application. However, direct testimony may be controverted by circumstantial evidence. The administration of justice does not require the establishment of a rule which would compel the court or jury to accept as absolute verity every statement of witness not contradicted by direct evidence. In this case the plaintiff was the only witness who testified as to the loss. There was no contradiction of his testimony by direct evidence. Under the nature of the case, the evidence as to any loss was wholly within the knowledge of the plaintiff (and his wife, who did not testify), and of such a nature that direct contradictory evidence could not ordinarily be found or presented; but, there were circumstances in evidence which the jury, as triers of the facts, were entitled to consider in arriving at their verdict. It appears from the bill of exceptions that plaintiff and his wife and son occupied a suite of three rooms; the hallway was on the west of these rooms; the living room on the south end of the suite; plaintiff's bedroom immediately north of living room; son's room north of plaintiff's bedroom. Between plaintiff's bedroom and living room there were no locks or bolts upon the door. Plaintiff testified he returned to the apartment about 11:30 at night; entered through room 1024, the living room; turned the two inside bolts so as to fasten the door; before retiring checked bolts on that door again; also checked bolts on door into son's bedroom

and found both doors bolted by both bolts on each door. Son's room was vacant that night, son being out of the city. Only two doors led to the corridor from this suite of rooms, one from living room and one from son's room. The lower lock was one that the key would open from the outside, the regular Yale lock. The middle lock was a turn bolt that would turn from the inside. The third, the top lock, was what they call the night bolt, a bolt you turn from the inside, but did not go through the door, and could not be reached from the outside at all. There were no transoms over the doors. Rooms on tenth floor; no access from the street. Windows had usual fastenings. In morning both bolts on both doors turned so doors could open. Wife had put rings in small coin purse in pocket in large purse that opened with a snap. On dresser where purse and money were left were some rather fragile perfume bottles. They were in the center of the dresser; the money was on one side and the purse on the other. Heard no disturbance during the night. Witness and wife were sleeping in this room. No light came on in the room. Before retiring had been in bathroom and closet; came through living room and had been in son's bedroom. Jewelry had been taken from inside of purse and purse left there.

The jury were entitled to consider not only the interest of the witness and the probability or improbability of his testimony, but also to consider all the facts and circumstances surrounding the transaction as disclosed by the evidence in the case, in connection with the direct testimony, in arriving at their verdict. Circumstantial evidence is equally competent with direct testimony; their relative convincing powers as against each other being for the jury's determination. We conclude that the issue as to the ownership of the property should have been submitted to the jury for their determination.

Defendant also urges that issue as to the value of the property, under the evidence, was for the jury. Only one witness testified as to its value. So far as appears from

record, he was a disinterested witness; he fixed specific valuations on the several items and his testimony was in no manner contradicted or controverted by either direct testimony or circumstantial evidence. As to that issue the evidence was such that different minds could not reasonably have drawn different conclusions. "It is not error for the court in an instruction to assume as true facts that are established by the evidence without controversy." *Major v. Harrison,* 132 Neb. 363, 272 N. W. 201.

It is urged by defendant that plaintiff and his wife were not "guests" of the Paxton Hotel, but tenants or lessees. As to this, the plaintiff testified he paid $150 a month; that he was billed by the day; and received a bill every week with the percentages figured according to the days; that he paid the bill every week, and it all figured up at the end to $150 a month. This evidence was in no manner controverted. Defendant cites *Pullman Co. v. Lowe,* 28 Neb. 239, 44 N. W. 226, wherein the syllabus states that the term "guest" is defined, but might have more accurately stated, discussed. Defendant apparently stresses the following statement from that opinion: "In short, any one away from home receiving accommodations at an inn as a traveler is a guest, and entitled to hold the innkeeper responsible as such. This we think is a correct definition of the word 'guest,' and we adopt the same." But in the opinion in that case the court also states: "The supreme court of Connecticut defines the word 'guest' as follows: 'A "guest" is one who patronizes an inn as such. But it is said that none but a traveler can be a guest at an inn in the legal sense.' We do not suppose that the court intended in the definition above quoted to lay stress upon the word traveler. It (the word guest) is used in a broad sense to designate those who patronize inns." This last statement we deem to properly define the word "guest" as now generally used and understood. Furthermore, the statute here involved was not then in force. In 1921 the legislature passed chapter 27, Laws 1921, here involved; one section thereof being amended in 1935, being

now designated as section 41-118, Comp. St. Supp. 1935, and section 41-119, Comp. St. 1929. Both parties to this controversy cite different provisions of the foregoing sections. By that act, all distinction as to liability and rights of hotels, apartment houses and rooming houses was abrogated and such places of business placed in one classification; all provisions of said law being applicable alike to keepers of hotels, apartment houses and rooming houses. By section 41-119, Comp. St. 1929, it is provided:

"For the purpose of this act, a *bona fide* guest shall mean and include all persons who have registered on a register, provided for such purpose, by hotels and rooming houses, whether assigned a room or rooms, or not, or occupants of apartments, or patrons of restaurants, or persons who have signified their intention in writing to become a guest of such hotel, restaurant, apartment house or rooming house."

The plaintiff and his wife come within the term "guest" as there defined. Whether that portion of defendant's premises occupied by the plaintiff and his wife is to be treated as a hotel, apartment house or rooming house is not material. It appears from the record that the defendant signed the hotel register and was assigned to a room. He had no other home or domicile and was not a traveler. But he was treated in the same manner with the same rights and privileges and furnished the same service and accommodations as other guests. So far as the actual relationship between the management of the hotel and plaintiff is concerned, it was identical with that existing between the hotel and temporary guests, except that he was charged, and he paid therefor, as heretofore specified. In a New York case involving analogous facts, evidence held to establish that plaintiff was a "guest" and not a "roomer." *Hart v. Mills Hotel Trust,* 144 Misc. 121, 258 N. Y. Supp. 417.

"Operator of 9 or 10-room establishment which was operated like hotel with separate keys for each room, and which catered to transients and local guests who were re-

quired to register, was 'innkeeper,' and hence responsible under statute for effects of guest which were stolen by servants or strangers, notwithstanding that guest rented room by week and that his home was in city in which establishment was located; particularly where operator posted innkeeper's rules." *Babin v. Thormander,* 167 So. (La. App.) 241.

"Plaintiff, who, prior to alleged theft of money from his room, had lived in defendant's hotel for about a year, under an arrangement whereby he was given a lower rate than that of transient guests, and paid his bills usually once each month, while transient guests paid each day, or at end of each week, held a 'guest,' rather than a 'roomer,' as respects defendant's liability for such loss." *Driskill Hotel Co. v. Anderson,* 19 S. W. (2d) (Tev. Civ. App.) 216. See *Kieffer v. Keough,* 188 S. W. (Tex. Civ. App.) 44.

While the holdings in other jurisdictions as to who come within the term "guest," in the absence of statutory provision, are not harmonious; in view of our statute, under the facts in this case, we conclude that the plaintiff and his wife were guests at the hotel, and that their rights, as well as the rights of defendant, are to be determined by the provisions of such statute.

Plaintiff complains of the failure of the court, by the instructions to jury, to place upon defendant the burden of proving facts essential to exempt it from liability under the statute. This complaint appears to be well founded. This court states the rule on such question in the opinion in *Dunbier v. Day,* 12 Neb. 596, 607, 12 N. W. 109, as follows: "When the fact of loss having occurred within the inn is established, which devolves upon the guest, the burden of showing it to be within one of these exceptions rests upon the innkeeper." This seems to be in accord with the general rule which is announced in 32 C. J. 559: "Whether innkeepers are held liable as insurers of goods of their guests, or only for negligence, proof that goods of a guest have been lost or injured makes out a *prima facie* case of liability and casts on the innkeeper the burden of

establishing such facts as will exonerate him. Thus the burden of proving plaintiff's contributory negligence is on the innkeeper. Also where an innkeeper claims the benefit of a statute, altering his common-law liability, the burden is on him to show compliance with the statute."

It is further urged by the plaintiff that the evidence offered was insufficient to show a compliance by the hotel company with the provisions of the statute to exempt it from liability for loss. That question, under the evidence, was a question of fact for determination by the jury; and, as there may be further testimony thereon, if the case is retried, this court will express no opinion as to the weight or the sufficiency of the evidence appearing in this record on that question.

On the part of plaintiff it is contended that the provisions of the statute (Comp. St. Supp. 1935, sec. 41-118) for the exemption of innkeeper from liability to the guest for loss of "money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage checks or tickets, negotiable or other valuable papers, and bullion" were not intended to cover watches, wedding bands and engagement rings, and a reasonable sum of money, being property which is usually carried and worn as a part of the ordinary apparel and outfit of a person, or is ordinarily carried and is convenient for use by travelers. The statute referred to provides:

"No person, firm or corporation, operating a hotel, restaurant, apartment house or rooming house, who constantly has in his place of business a metal safe or vault in good order, and fit for the custody of money, bank notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage checks or tickets, negotiable or other valuable papers, and bullion; and who keeps on the doors of the sleeping rooms used by guests, suitable locks or bolts, and on the transoms and windows of said rooms, suitable fastenings; and who keeps a copy of this section printed in distinct type, constantly

and conspicuously posted in not less than ten places in all, in said place of business, shall be liable for the loss or injury to such property suffered by any guest, unless such guest has offered to deliver the same to such keeper of hotel, restaurant, apartment house or rooming house, for the custody in such metal safe or vault, and the proprietor of such business has omitted or refused to take it, and deposit it in such safe or vault for custody, and to give such guest a receipt therefor."

Reference is made in briefs of counsel as to the construction placed on this section by the trial court on entering the judgment notwithstanding the verdict from which appeal was taken. The record is silent as to how the trial court arrived at its conclusion, and counsel appear to have different theories with reference thereto; but from the findings it would seem quite apparent how the result was obtained. This action is for the recovery of losses claimed to have been sustained by two different parties. The trial court found plaintiff entitled to recover for two items in the first cause of action, that is, watch, $285, and wedding ring, $10, total, $295; and on second cause of action, cash, $60, the only item involved therein, making the total recovery awarded plaintiff $355. Whether this recovery was awarded on the theory that defendant had not proved compliance with provisions of statute essential to relieve it of liability, or that the property was not such as guest required to deposit, is not apparent. No mention is made in the findings of the court as to the Tiffany diamond ring, which the evidence discloses to have been of the value of $485, the petition claiming $498.50 therefor, and no recovery is allowed for that item. The court may well have concluded, as the defendant contends, that under the issues in this case defendant would not be liable for that item in any event; there being no charge of actual negligence as a proximate cause of the alleged loss, and the property exceeding the value of $300. By section 41-118, Comp. St. Supp. 1935, following the provision above quoted, it is provided:

"Provided, however, that the proprietor. of such business place, shall not be obliged to receive. from any one guest for deposit in such safe or vault, any property herein-before described, exceeding a total value of $300, and shall not be liable for the value of any such property in excess of $300, whether receipted for or not." .

. The wording of this provision of the statute is definite. By the first clause it is provided that the hotel company shall not be obliged to receive from any one guest for deposit in its safe any of the property described in said section exceeding a total value of $300. Under such pro-vision the defendant in this case would have been under no obligation to have accepted from the plaintiff the ring designated in petition as lady's Tiffany diamond ring, per-fect top Wesselton, of the value of $498.50. The second clause of said subdivision provides that the hotel company "shall not be liable for the value of any such property in excess of $300, whether receipted for or not." We are at a loss to see how any language. could be made plainer, where it was the intention to relieve the hotel company. of liability for the value of any property in excess of $300. In a case involving the construction of a statute almost identical, the supreme court of Maine, in an action in which the evidence failed to show that the hotel company had complied with the conditions of the statute by posting the notices, held that the proviso limited the liability of the hotel company for all property lost by guest to the sum of $300; and, further, that by its terms, it applied to all property, whether received for safe-keeping or not. *Wagner v. Congress Square Hotel Co.*, 115 Me. 190, 98 Atl. 660. We conceive this to be the correct construction to be placed upon the statute here involved.

Is a platinum watch included within the articles specified in said statute? It is not specifically mentioned. If it can-not be held to be within the specification of "jewelry," or "personal ornament," there is no other article or specifica-tion in statute that could possibly include a platinum·watch. The statute being in derogation of the common law must

be strictly construed; its application is to be limited to the particular species of property named; and, while in its construction its object and purpose may be taken into consideration, it cannot be extended in its operation and effect so as to include articles of property not fairly within its terms. There is nothing in the statute to indicate that the words there used are to be given any meaning other than that in which they are ordinarily used and understood. A watch is not ordinarily considered as "jewelry" nor as a "personal ornament," but a timepiece, an article of utility, carried for use and convenience. *Ramaley v. Leland,* 43 N. Y. 539, 3 Am. Rep. 728; *Hart v. Mills Hotel Trust, supra; Kennedy v. Bowman Biltmore Hotel Corporation,* 157 Misc. 416, 283 N. Y. Supp. 900. The authorities are not in entire accord on this question, but when the difference in the wording of the statutes is considered, as well as the material of which the watch involved is made, there is not so much difference as might at first appear. In some instances the statute includes in its description "valuable articles," which has been held to include watches. While in other instances, watches with a gold case have been held to come within the provision "articles of gold and silver manufacture;" although the authorities are not in harmony upon that. Whatever conclusion might be reached, were the watch here involved a gold case watch, is not important. It is obvious that a platinum watch does not fall within the description of any of the articles specified in said section. If the legislature had intended to include in the statute an article of such general and common use as a watch, we think it would have used the word "watch."

Plaintiff contends that the two rings, that is, one lady's Tiffany diamond ring, blue white, perfect top Wesselton, and one lady's 14-carat Tiffany wedding ring band, being part of her ordinary wearing apparel, do not come within the articles specified in said section. No authority for so holding has been cited by plaintiff. Among the articles included in the statute are "jewelry" and "personal orna-

ments." If they, the rings, do not fall within such specifications, the statute could have but little application. Regardless of the specific use to which these rings may be available and adapted, or the occasion which may have brought them into possession of the owner, it is obvious that they are both "jewelry" and articles of "personal ornament," and manifestly included within the specified articles which must be deposited with the hotel in safe provided for that purpose, under the law here involved, if a guest desires to place the responsibility for their safe-keeping upon the hotel company. In *Jones v. Savannah Hotel Co.*, 141 Ga. 530, 81 S. E. 874, 51 L. R. A. n. s. 1168, the supreme court of Georgia, in considering such question, states:

"It may seem somewhat of a hardship to require a traveler on retiring at night to deposit articles of personal adornment, like those involved in the present case; but the statute is absolute and must be complied with, else the innkeeper will be relieved from liability for the loss of such articles. The statute was not enacted for the benefit of travelers; for without it they could rely on the common-law liability of the innkeeper. Its purpose was to relax the stringent rule of the common law, so as to permit the innkeeper to protect himself against liability under certain circumstances."

The responsibility of the hotel keeper under the statute here involved is always subject to the provision of that statute limiting the liability of the proprietor of a hotel to a valuation of $300.

Plaintiff further contends that the $60 in money which he is seeking to recover by the second cause of action did not come within the provision of said law, for the reason that such an amount of money, considering the plaintiff's financial standing, his business connections and requirements of hotel life, was a reasonable sum which he was not required to deposit with the hotel company under the provisions of said statute. The statute makes no such exception. Its language is clear and explicit. If the legislature

had intended such an exception as is contended for, it would have been easy to have so provided. But, if the legislature intended, as we conclude it did, to relieve the hotel company from responsibility for all money and articles mentioned, on compliance, on its part, with the provisions of said statute, it would certainly have been difficult to have more clearly expressed their intention than by the language used. There is no evidence of any different intent to be derived from the terms of the statute. Where a hotel company has complied with the provisions specified by the statute for the purpose of relieving it from liability for the money and articles of a guest specified therein, if a guest, on account of convenience to himself, sees proper to retain his money on his person or in his own room, he does so at his own risk in the absence of pleading and proof of actual negligence on the part of the hotel company. We can put no other construction on this statute without disregarding its plain terms and interpolating something into the statute that is not there. *Rains v. Maxwell House Co.*, 112 Tenn. 219, 79 S. W. 114; *Hart v. Mills Hotel Trust*, 144 Misc. 121, 258 N. Y. Supp. 417.

The judgment of the district court is reversed and cause remanded.

REVERSED.