ADNA L. NORCROSS *versus* HENRY NORCROSS, *Appellant.*

In case against an innkeeper, the words — "being entertained as a guest therein in the inn of the said" defendant, constitute a sufficient allegation that the defendant was an innkeeper.

The possession of a license does not make, nor the want of it prevent a person from being an innholder at common law.

Innkeepers are insurers of the property of their guests committed to their care, and are liable for its loss or injury, when not caused by the act of God, the public enemy, or the neglect or fault of the owner or his servants.

Upon proof of loss, the *onus* of bringing the case within the exceptions is upon the innkeeper.

If a person goes to an inn as a wayfarer and traveller, and the innkeeper receives him as such, the relation of landlord and guest attaches at once with all of its rights and liabilities, and so continues so long as he sojourns there as a traveller.

The liability of innkeeper attaches to goods when they are brought within the inn or otherwise placed within his custody in some customary and reasonable manner.

If a guest, in the absence of the landlord and his servants, hang up his coat in the place in an inn allotted for that purpose, it is *infra hospitium.*

On Report from *Nisi Prius,* WALTON, J., presiding.
CASE.

The writ contained three counts; the second count was for money had and received; and the first, being similar to the third, was as follows : —

"For that whereas, according to the law and custom of the land, the innkeepers, that keep common inns to lodge and to entertain as guests, travellers, strangers and others therein who abide in the same, are bound to keep their goods and chattels, being within those inns, day and night without diminution, pilfering or loss, so that no damage or loss may happen to any such traveller or such guest for want of due care in such innkeepers or their servants, and the said plaintiff, viz.: on the fourteenth day of October, eighteen hundred sixty-two, at Augusta, aforesaid, *being entertained as a guest in the inn of the said defendant,* had a certain overcoat, of the value of twenty dollars, within that inn and delivered the same to the said plaintiff, then and there to be safely kept. Nevertheless the said defendant, then and there knowing the said overcoat to be so as aforesaid, within his said inn, the same day and place, did so negligently keep said overcoat that said overcoat, for want of safe keeping thereof, by said defendant and his servants, was then in said inn wholly lost. And said defendant has not delivered to said plaintiff his said overcoat, although the said defendant was thereafterwards, viz., on the same day, thereto requested, but hitherto hath refused, and

still doth refuse so to do, or make him any satisfaction for the same."

The plaintiff testified :—"I first put up at the defendant's, Sept. 17, 1862. Usually stopped one day or more. Was there three nights the first time. Was there from 22d to 26th of Sept.; from 29th Sept. to 1st Oct.; and from Oct. 13th to 19th. The Kennebec House was burned in the evening before I retired. Great many were going in and out of the office, and I told defendant I would take my coat and put it on as there was a great deal of bustle and some one might steal it. I went to the fire and returned into the office about eleven o'clock. A man came in, and wanted lodging; defendant told him he was full; I told defendant I would let the man have my room and I would go over the river and lodge, and did so, taking my coat with me.

"Next morning I came back to Franklin House; saw no one in the office; hung up my coat and went into breakfast. After I came out, I looked for my coat and could not find it, and never have found it. I told defendant I had lost my coat; hunted the coats all over.

"Defendant was at home Oct. 14, and also every time I was there. He knew I was there. I settled my bill Oct. 19. Some of them told me I could not have my horse until I settled the bill. Defendant looked over the bill and knew I paid it."

*Cross examination.*—"The receipt is dated September 18, 1862, but was paid Oct. 19th. I did not always register my name. Sometimes defendant, or the clerk, registered it. I hung my coat on hooks prepared for hanging up coats. There were coats all around. I did not put my coat into the charge of any one only as I have stated. The receipt paid the bills up to Oct. 19th. I think I was at defendant's house some eight or nine days in all. My name was registered at night, the 13th. I did not register my name the morning I lost my coat."

It was admitted that defendant was an innkeeper as alleged in the writ; that he kept the Franklin House; but

was not licensed as required by statutes.   Also, that demand for the coat or its value was duly made.   The parties agreed that the Court may exercise jury powers and, if the action can be maintained, defendant is to be defaulted for fifteen dollars damage and his cost; otherwise plaintiff nonsuit.

*R. Foster*, for the plaintiff.

*E. F. Webb*, for the defendant, contended —

The action is tort for a non-feasance.

Declarations in such cases are descriptive, and must allege all the circumstances necessary for the support of the action, and contain a full, regular and methodical statement of the injury complained of.  1 Chitty on Pl., 253.

It does not specifically, state that defendant was an inn-keeper at the time of loss; or that plaintiff's coat was in defendant's custody at time of loss; or that plaintiff continued to be and was defendant's guest at time of loss; or that the loss did not occur by negligence of plaintiff; or that the defendant kept a common inn in any county in the State; or that he was licensed.   2 Chit. Pl., 668.

"The plaintiff being entertained therein in the *inn of the defendant*" is not alleging whether it was kept *by* defendant or a *lessee.*

The admission does not include any venue.   It may have been the "Franklin House" of Bangor.   What "river" did plaintiff "*go over*"?   Kennebec, or Penobscot?

Plaintiff's testimony does not indicate in what county he lost his coat.

If defendant was not licensed, he had given no bond.   R. S. c. 27.

Hence defendant might have kept coffee-house or eating-house, and such are not innkeepers, and are not liable for losses.   1 Parsons on Con., 623.   Plaintiff must show affirmatively that defendant was an innkeeper.

If an inn-keeper is licensed, there is an implied contract that he will receive and entertain guests, &c; but without

a licence there is no such implication. 3 Blackstone's Com., 164.

The test whether or not a man is an innkeeper is, is he bound to receive a guest and his goods. 1 Parsons on Con., 629, 630. Without a license he is not so bound. If a person become the guest of an unlicensed innkeeper, the contract must be a *special* one.

Evidence does not show plaintiff to have been the guest of the defendant at time of loss. When plaintiff "went over the river," the relation of guest and innkeeper ceased. 2 Kent's Com., 592, note 2 ; *McDaniel* v. *Robinson*, 26 Vt., 334.

Plaintiff must show that he again resumed the character of guest. Taking a room is the decisive act. *McDaniel* v. *Robinson, supra.*

Going into the house, hanging up his coat, and going into breakfast, all in absence of defendant and servants, do not constitute him a guest.

The coat was stolen before defendant knew it was there. Plaintiff was guilty of negligence, and hence defendant is not liable. *Armstead* v. *White*, 6 Eng. L. and Eq. R., 349 ; *Carhill* v. *Wright*, 37 Eng. L. and Eq. R., 175.

Putting the coat back from *whence he took it for "fear it might be stolen"* was negligence measured by his own sense of prudence.

Liability of innkeepers and common carriers are the same. *Mason* v. *Thompson*, 9 Pick., 280.

That of the latter does not attach until delivery, and in case of constructive delivery, such as leaving goods on a wharf, &c., notice must be given to the carrier. 1 Parsons on Con., 654 ; Story on Bailments, 532.

*Berry* v. *Shaw*, 31 Maine, 478, was decided before change of law admitting parties. More strictness should be required since such change.

DICKERSON, J. — The plaintiff seeks to recover of the defendant the value of an overcoat, committed to the care of

the latter, as innkeeper. Several preliminary objections are raised by the defendant against the plaintiff's right to maintain the action in its present form. It is said that the action is *assumpsit*, and that *case* is the proper form of action. It is true that *case* is the usual form of action where *negligence* is charged, though we are by no means certain that assumpsit could not be maintained on breach of an innkeeper's contract, safely to keep and deliver the goods of his guests, when the facts are sufficiently set forth in the declaration. The first and third counts in the writ, however, are drawn with the necessary formality of declarations in *case*, but the second count is in *assumpsit*. No demurrer has been filed to the misjoinder of the two forms of action, and the plaintiff has moved for leave to discontinue as to the money count. Under these circumstances, we think the objection cannot avail the defendant, it being entirely competent for the Court to allow the discontinuance of the second count, or to render judgment on the first and third counts.

The language of the writ, "being entertained as a guest therein, in the inn of the said Henry Norcross," though somewhat inartificial, is a sufficient allegation that the defendant was an innkeeper; and the admission that "the defendant was an innkeeper, as alleged in the writ, and kept the Franklin House," is sufficient proof, in connection with the plaintiff's testimony, that he kept the inn at which the plaintiff stopped.

That the defendant was not licensed as an innkeeper, is no objection to the maintenance of this action. A license does not change the character of the business of those who entertain travellers. The possession of it does not make, nor the want of it prevent a person from being an innholder at common law; it is his business alone that fixes the *status* of a party in this respect. A license saves an innholder from the penalty of being an innholder without license, but the want of it does not save him from his liability to his guests; it would be a perversion of justice, and a fraud

upon the law, if he could avail himself of his own criminality to defeat their lawful claims against him. Besides, it is not their duty to inquire whether one who entertains travellers is duly licensed, if, indeed, they could ascertain this upon inquiry.

Innkeepers are under the same liability as common carriers. They are insurers of the property of their guests committed to their care, and are liable for its loss, or any injury done thereto, not caused by act of God, the public enemy, or the neglect or fault of the owner, or his servants. This strictness of liability is necessary in order to protect travellers against any collusion between the innkeeper and his servants, and to compel him to take care that no improper persons be admitted into his house. His charge for the entertainment of his guests is supposed to cover this risk; and he, also, has a lien upon their property, entrusted to his care, to indemnify him against loss. Upon proof of loss, the burden of bringing the case within the exceptions to his liability is upon the innkeeper; and proof of the strictest care on his part avails him nothing, if it falls short of this. *Shaw* v. *Berry*, 31 Maine, 479; *Mason* v. *Thompson*, 9 Pick., 280.

Who are guests, in legal contemplation, and when the property of guests may be regarded as committed to the care of the innkeeper, are sometimes questions of no little intricacy. If a person goes to an inn as a wayfarer, and a traveller, and the innkeeper receives him into his inn as such, he becomes the innkeeper's guest, and the relation of landlord and guest, with all its rights and liabilities, is instantly established between them. Neither the length of time that a man remains at an inn, nor any agreement he may make as to the price of board per day, or per week, deprives him of his character as a traveller and a guest, provided that he retains his *status* as a traveller in other respects. If an inhabitant of a place makes a special contract with an innkeeper, there, for board at his inn, he is a boarder, and not a guest. The test questions are, was he a travel-

ler, and a wayfarer, and was he received and entertained, as such, by the innkeeper in his inn? If he was, he at once becomes the innkeeper's guest, and the relation subsists so long as he sojourns there, as a traveller. *Berkshire Woollen Co.* v. *Proctor*, 7 Cush., 417.

The liability of innkeeeepers does not attach unless the goods are brought within the inn, or otherwise placed within their custody in some customary and reasonable way. It is not necessary that the goods should be placed in their special keeping, but it is sufficient if they are deposited in the house of the innkeeper, or entrusted to the care of his' family or servants. 2 Kent's Com., 593; Story on Bail., § 479.

In *Clute* v. *Wiggins*, 14 Johns., 175, the guest put his sleigh, loaded with wheat, into an outhouse appurtenant to the inn, where loads of the kind were usually received, but without specially committing it to the innkeeper. The grain was stolen in the night, and the innkeeper was held liable for the loss. It would be otherwise if a traveller, on arriving at an inn, should place his loaded wagon under an open shed, not appurtenant to the inn, and near the highway, and make no request to the innkeeper to take it into his custody. *Albin* v. *Presley*, 8 N. H., 409.

It is evident from these principles that the plaintiff was a traveller, and a wayfarer, and was received and entertained by the defendant at his inn as his guest. The plaintiff hung up his coat in the place in the inn allotted for that purpose. It was not his fault that neither the innkeeper nor his servants were in the room at this time, nor was it his duty to guard his garment until they should come into the room, or to inform them where he had put it. His duty was discharged when he left his coat in the place established by the defendant for depositing such articles.

The defendant must be defaulted on the first and third counts in the writ, for fifteen dollars and costs.

APPLETON, C. J., CUTTING, WALTON, BARROWS and DANFORTH, JJ., concurred.