ALMIRA HANCOCK, Respondent, *v.* GEORGE W. RAND et al., Appellants.

Persons belonging to the army and navy, who have no permanent residence they can call home, are to be regarded as travelers when stopping at public inns ; to deprive them of their privileges as such, and to give them the character of boarders merely, it must appear that an explicit contract was made to that effect.

Plaintiff and her husband H., who was an officer in the United States army, having no permanent home, but living where military duty called him, occupied rooms in the defendant's hotel under an agreement, ·by which they were to so occupy, upon terms specified, until the spring or summer following, provided every thing was satisfactory, and the husband was not sooner ordered away on military duty. H. and family took their meals at the hotel restaurant, paying for each meal the same as other guests. No notice was posted in said rooms as prescribed by the Innkeepers Act (Chap. 421, Laws of 1855). In an action to recover the value of property of plaintiff, stolen from said rooms while so occupied, *held*, the facts justified a finding that the relation between the parties was that of innkeeper and guest ; and so that defendants were liable.

It appeared that defendants kept separate apartments for boarders and for transient persons, and that H. and family were registered among the former. *Held*, in the absence of proof that H. was aware of this fact, defendants' liability was not affected thereby.

It appeared that H. and family for several years prior to their going to defendants' hotel had been boarding at another hotel in the same city.

*Held*, that this did not affect the question of their relationship with defendants, or establish that they were citizens of that city.

*Vance* v. *Throckmorton* (5 Bush, 41), *Manning* v. *Wells* (9 Humph. 746), *Hursh* v. *Byers* (29 Mo. 469), *Pollock* v. *Landis* (36 Iowa, 651), *Lusk* v. *Belote* (22 Minn. 468), distinguished.

(Argued October 10, 1883 ; decided November 20, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 28, 1881, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*Theo. C. Sears* and *Chas. P. Crosby* for appellant. Defendants' liability to plaintiff can arise in this action only from the fact that she was a traveler or passenger. (*Mowers* v. *Feathers*, 61 N. Y. 34 ; *Drope* v. *Thain*, Tatch. 127 ; *Grimstone* v. *Innkeeper*, Hetter, 49 ; Chitty on Contracts, 476 ; Bacon's Abr. 228 ; Story on Bailments, § 475 ; Parsons on Contracts, 145 ; *Thompson* v. *Lacy*, 3 B. & Ald. 283, 286 ; Edwards on Bailments, 388.) General Hancock and family were not "guests" of the defendants, because they were not travelers or passengers. (17 Hun, 283 ; Story on Bail., § 477 ; Edwards on Bail., 394 ; 2 Parsons on Contracts, 150 ; *Berkshire Woolen Co.* v. *Proctor*, 7 Cush. 417 ; *Pinkerton* v. *Woodward*, 33 Cal. 557 ; *Norcross* v. *Norcross*, 53 Me. 169 ; *Walling* v. *Potter*, 35 Conn. 583 ; *McDaniels* v. *Robinson*, 26 Vt. 316 ; *Vance* v. *Throckmorton*, 5 Bush [Ky.], 41 ; *Manning* v. *Wells*, 9 Humph. [Tenn.] 746 ; *Hirsh* v. *Byers*, 29 Mo. 469 ; *Pollock* v. *Landis*, 36 Iowa, 651 ; *Lusk* v. *Belote*, 22 Minn. 468 ; *Chamberlain & Co.* v. *Masterson*, 26 Ala. 371 ; *Ingallsbee* v. *Wood*, 33 N. Y. 577.) The defendants did not receive the plaintiff into their hotel as a guest, but as a permanent boarder. (*Stewart* v. *McCready*, 24 How. 62 ; *Willard* v. *Reinhart*, 2 E. D. Smith.) The referee committed error in the admission of the testimony of General and Mrs. Hancock, as to the value of the articles

lost. (*Terpenning* v. *Corn Exchange Ins. Co.*, 43 N. Y. 282; 1 Greenl. Ev., § 440; 1 Phillips' Ev. 290; *Clark* v. *Baird*, 5 Seld. 183; *Bedell* v. *T. I. R. R. Co.*, 44 N. Y. 267; *McCormick* v. *Railroad Co.*, 49 id. 303; *Gouge* v. *Roberts*, 53 id. 619; *Jay* v. *Hopkins*, 5 Denio, 84; 3 Abb. N. Y. Dig. 70, § 1024; *Culver* v. *Haslam*, 7 Barb. 320; *Chambers* v. *Cogney*, 85 N. Y. Sup. Ct. 174; *Harris* v. *Panama R. R.*, 3 Bosw. 7; *Morehouse* v. *Matthews*, 2 Conn. 514.)

*George G. Munger* for respondent. A mere reduction of price, even though accompanied by a promise or agreement as to length of stay, does not alter the relationship of landlord and guest. (17 Hun, 279; *Pinkerton* v. *Woodward*, 33 Cal. 557; *Berkshire Woolen Co.* v. *Proctor*, 7 Cush. 417; *Norcross* v. *Norcross*, 53 Me. 169; *Lima* v. *Dwinell*, 7 Alb. L. J. 44; Story on Bail., § 477; *Hall* v. *Pike*, 100 Mass. 495; *Jolie* v. *Cardinal*, 35 Wis. 118; *Lusk* v. *Belote*, 22 Minn. 468; *Richmond* v. *Smith*, 8 B. & C. 000; *Parker* v. *Flint*, 12 Mod. 255; *Walling* v. *Potter*, 35 Conn. 183; 5 Tenn. 273; 5 Barb. 568; *Allen* v. *Smith*, 12 C. B. [N. S.] 618; *Kisten* v. *Hildebrand*, 9 B. Monr. 72; Bac. Abr., Inns and Innkeepers, chap. 5; Story on Bail., § 177.) The finding of the referee that there was no special contract is essentially one of fact, and is supported by sufficient evidence, and the Court of Appeals will not reverse the conclusion of the referee on such a question after it has been passed upon by the General Term. (Code of Civil Proc., §§ 1337, 1338; *Griffin* v. *Marquardt*, 17 N. Y. 28; *Dain* v. *Wyckoff*, 18 id. 45; *Priest* v. *Price*, 3 Keyes, 222; *Colwell* v. *Lawrence*, 38 N. Y. 71; *Cady* v. *Allen*, 18 id. 573; *Metcalf* v. *Mattisons*, 32 id. 464; *Ostrander* v. *Fellows*, 39 id. 350; *Davis* v. *Spencer*, 24 id. 386; *Wegman* v. *Childs*, 41 id. 159; *Burgess* v. *Simonson*, 45 id. 225; *Dayton* v. *Borst*, 31 id. 435; *Newton* v. *Bronson*, 13 id. 587.) The fact that at the time of the loss meals were furnished to plaintiff from the general restaurant of the hotel, when ordered and only when ordered *à la carte* from the regular bill of fare as furnished to all customers, and were paid for by plaintiff

at the regular prices set down on such bill of fare, without reduction of any kind, would establish the liability of the innkeeper, even though plaintiffs had rooms outside of the hotel, and from other parties. (*McDonald* v. *Edgerton*, 5 Barb. 560; *Parker* v. *Flint*, 12 Mod. 255; *Bennett* v. *Ditson*, 5 Term R. 273; *Kopper* v. *Willis*, Gen. Term, N. Y. Com. Pleas, Jan. 31, 1881; Daily Reg., Jan. 31, 1881; *Kopper* v. *Willis*, Gen. Term, N. Y. Com. Pleas, Jan., 1881; *Thompson* v. *Lacy*, 3 B. & Ald. 283; *Parkhurst* v. *Foster*, 1 Salk. 387; *Cromwell* v. *Stevens*, 3 Abb. N. S. 35; *Willard* v. *Reinhardt*, 2 E. D. Smith, 148; 25 Wend. 653; 9 Humph. 179; *Stewart* v. *McCready*, 24 How. Pr. 62; *Lima* v. *Dwinelle*, 7 Alb. L. J. 44; *Wintermute* v. *Dwinnelle*, 5 Sandf. 147; *Manning* v. *Wells*, 9 Thomp. 746; *Stewart* v. *Seymour*, Anthon's Law Student, 51; *Mower* v. *Feathers*, 61 N. Y. 64.) Any person who comes to a hotel or an inn, recognized and admitted to be such, for the purpose for which such hotel or inn is kept, and whom the landlord is bound to receive, becomes a guest, and the landlord's liability as insurer attaches unless he has relieved himself therefrom by posting the notices required by law. (*Mowers* v. *Feathers*, 61 N. Y. 34; *Richmond* v. *Smith*, 8 B. & C. 9; *Bennett* v. *Ditson*, 5 Term R. 273; *Grennell* v. *Cook*, 3 Hill, 488; *Kopper* v. *Willis*, Gen. Term, Com. Pl., Daily Reg., Jan. 31, 1881; *Ingoldsby* v. *Wood*, 36 Barb. 452; 33 N. Y. 577; *Catlin* v. *Hobbs*, 12 Mich. 52; Story on Bail. 423, § 476; Humph. [8th ed.] 179; *Burgess* v. *Clements*, 4 M. & S. 206; *Fell* v. *Knight*, 8 M. & W. 269; *Farnsworth* v. *Packard*, 1 Stark. 249; Edw. on Bail. [1st ed.] 394; *Ambler* v. *Skinner*, 7 Robt. 561; *Caly's Case*, 8 Coke, 63, note *b*; *Walbrook* v. *Griffith*, Moore, 876; *Warbroke* v. *Griffin*, 2 Brown & Golds. 254; Bacon's Abr., Inns and Innkeepers, chap. 5.) A contract, as to length of stay and prices, made with one who comes to an inn for the purpose for which an inn is kept, does not alter the legal rights or liabilities of landlord or guest, and is not a special contract. (*Piper* v. *Manny*, 21 Wend. 282; *Richmond* v. *Smith*, 8 B. & C. 9.) Plaintiff was competent to testify as to the question of the value of the

articles lost.  (*Merrill* v. *Grinnell*, 30 N. Y. 594; *Smith* v. *Hill*, 22 Barb. 656; *Watson* v. *Bauer*, 4 Abb. Pr. 273; *Joy* v. *Hopkins*, 5 Denio, 84; *Derby* v. *Gallup*, 5 Minn. 134; *Smith* v. *Frost*, 32 N. Y. Supr. Ct. 87; *Clark* v. *Baird*, 9 N. Y. 196.)  The question whether the relation of innkeeper and guest existed between the plaintiff and the defendants was one of fact, and having been found in favor of the plaintiff, will not be reviewed by this court.  (*Hall* v. *Pikey*, 100 Mass. 495; *Jolie* v. *Cardinal*, 35 Wis. 118; *McDonald* v. *Edgerton*, 5 Barb. 560.)

MILLER, J.  The plaintiff claims to recover in this action the value of property stolen while a guest at the hotel of the defendants in the city of New York.  The findings of the referee show that the plaintiff was an inmate of the defendants' hotel from November, 1873, until June, 1874, and that the articles lost were taken from the rooms occupied by plaintiff in the month of March, 1874; that the husband of the plaintiff, General Hancock, was an officer in the United States army, and that in November, 1873, he applied for rooms and board at the defendants' hotel for himself and family; that after some conversation between the defendants and said Hancock, in regard to himself and family remaining at defendants' hotel, in which certain rooms, in a private house adjoining said hotel, which the defendants were then using in connection with the same, were mentioned, it was said by General Hancock that he expected to remain until the following summer, provided every thing was satisfactory, and provided also he was not sooner ordered elsewhere on military duty; that the defendants offered the terms which they would take for said rooms, which terms General Hancock accepted on the understanding that he should continue to occupy them until the next following spring or summer, provided every thing was satisfactory, and provided also he was not sooner ordered away on military duty.  The referee also found that General Hancock and family, immediately prior to their going to the hotel of the defendants, had been boarding at another hotel in New York

city, and had no permanent home anywhere ; that prior to the year 1873 and ever since that time the home of General Hancock has been wherever his military head-quarters were, and that such head-quarters during that time have been at different places. The referee refused to find, as requested by the defendants, that any substantial agreement had been made by General Hancock as to the length of time he and his family should occupy said rooms.

We think that the finding of the referee as to the understanding under which General Hancock and family came to the defendants' hotel is sufficiently supported by the evidence, and that his refusal to find that there was any substantial contract as to time between the parties was fully justified. It appears very distinctly by the proof that no specified time was absolutely fixed or agreed upon for the stay of General Hancock and family at the defendants' hotel, and no express contract was made in regard to the same. According to the evidence the General and family had a perfect right to leave at any time after the contract was made, and were not bound to remain for even an entire day, the moment General Hancock was dissatisfied he and his family had a right to leave the hotel, so also if ordered elsewhere he had a right to leave. It rested with him in these contingencies to do and act exactly as he pleased. It was a fluctuating agreement, depending upon his own will and caprice, and it cannot be said that the minds of the parties met as to any specific time whatever. The defendants could not have recovered damages by reason of his leaving at any moment. As an officer in the army his duty might at any time have called him away to some distant and remote place ; and individually he had the right to say when he should go without consulting the defendants. Really and actually he was but a transient guest, who had the right to come and to go whenever he pleased. Officers of the army and navy, and soldiers and sailors, who have no permanent residence which they can call home, may well be regarded as travelers or wayfarers when stopping at public inns or hotels, and to make them chargeable as mere boarders it should be shown

satisfactorily that an explicit contract had been made which deprived them of the privileges and rights which their vocation conferred upon them as passengers or travelers. General Hancock and the defendants evidently had this in view in the conversation which took place between them in regard to the former's stay at the latter's hotel. The fact that General Hancock was subject to marching orders at any moment, and that this contingency was expressly provided for, makes a wide distinction between the case at bar and one which possesses no such features. This difference and the circumstances connected with it should be sufficient to take this case out of the ordinary rule which applies between an innkeeper and a permanent boarder, and fully sustains the rule we have laid down without disturbing the relationship or obliterating the distinction which exists between a guest and a boarder. In view of the evidence presented and the findings of the referee, we think the defendants are bound within the reason of the rule under which an innkeeper is held liable for the goods and property of his guest. As a soldier, General Hancock was unable to acquire a permanent home, and by reason of his profession was obliged to live temporarily and for uncertain periods of time at different places and with innkeepers and others who make provision for the entertainment of guests and travelers. He was necessarily a transient person liable to respond to the call of his superiors at any moment and to change the locality of himself and family. The defendants kept a hotel or inn taking care of transient guests, some staying for a longer, some for a shorter period. General Hancock, for himself and family, paid for their meals the same as other transient guests, and by express agreement they were at liberty to leave at any time they saw fit. Under these circumstances no reason exists why they should not be protected as well as the other travelers or guests at the hotel. It is very evident, from the testimony, that no absolute and express contract was made for the hiring of the rooms and the board of General Hancock and his family for any stipulated period of time, and the most that can be claimed, on the part of the appellants, is

that it was a question of fact for the consideration of the referee and for him to determine whether General Hancock and family were travelers and guests or boarders. On the one hand, as already stated, General Hancock was a transient person and could not depend upon remaining for any particular period of time at any place ; he was without any permanent residence or home, and it positively appears that he made no arrangement for any permanent occupation of the rooms at defendants' hotel. · On the other hand separate apartments were kept for boarders and for transient persons by the defendants, and the General and his family were registered among the former, but it does not appear that he knew this fact, and hence it cannot well be claimed that he had grounds for supposing and understood that he and his family were boarders and not guests. The authorities hold beyond question that the fixing of the price does not make the party a boarder. (See *Pinkerton* v. *Woodward*, 33 Cal. 557; *Berkshire Woolen Co.* v. *Proctor*, 7 Cush. 417; *Norcross* v. *Norcross*, 53 Me. 169; *Walling* v. *Potter*, 35 Conn. 183.) The fair intendment from the evidence is that General Hancock did not go to defendants' hotel under a contract hiring the rooms for a season, but that he was a transient person who had the right to leave at any moment, the same as any other guest. Regarding the evidence as it stands, and conceding the facts in reference to the question whether General Hancock and family were travelers and guests or boarders, there would seem to be but little question that the weight of the testimony is in favor of the proposition that they were travelers or wayfarers and that there was no hiring of the rooms of the defendants for a season or a specified time. Even if there might have been a doubt as to whether there was a hiring for a term, as the referee has found in favor of the plaintiff upon this question, we cannot disturb the finding and it should be upheld.

In considering the question discussed it should not be overlooked that the St. Cloud Hotel was kept as a public inn in every sense and was clearly distinguishable from a boarding-house ; its proprietors did not claim that it was a boarding-house, and there

is no evidence to show that it was considered in that light, and neither the fixing of the price nor the conversation had in reference to the probability of General Hancock and family remaining for a period of time could alter or change its true character. Hotels in modern days are differently conducted from what they were in times gone by. Furnishing rooms at a fixed price and meals at prices depending upon the orders given at the usual hotel rates constitutes a material difference in the system of keeping hotels from that which formerly existed. The defendants conducted a restaurant in connection with their hotel, at which meals were furnished in accordance with fixed prices. General Hancock and family, after the first month of their stay at the defendants' hotel, and at the time the property in question was stolen, took their meals at the restaurant, for which they paid prices for each meal the same as other guests or travelers. So far then as this is concerned they must be considered the same as other guests. Certainly they were not boarders in the sense in which that term is understood. As they were guests at the restaurant at the time when the loss occurred and paid as such, it is difficult to see upon what principle it can be urged that they were boarders because their lodgings were in the hotel or in rooms connected therewith. To sustain such a rule would make them boarders in part and guests in part. This would be unreasonable, the more so in this case, because the proof does not establish a contract for any fixed time.

The appellants' counsel claims that the referee having found that General Hancock and family for several years prior to going to the St. Cloud Hotel had been boarding at another hotel in New York city, therefore they were not travelers or passengers, but were at their home and were citizens of New York. As we have already seen, the General being a soldier, and liable to be called to distant and remote places by order of the government, and thus obliged to change his head-quarters, had no residence in the city of New York, and when stopping at a hotel awaiting orders, with the right to leave at any moment, he must be regarded as a transient person the same as any other traveler or passenger. At common law the

innkeeper was compelled to furnish lodgings and entertainment for travelers and passengers, and he was bound to protect the property they brought with them and was liable if it was lost or injured. (See *Mowers* v. *Fethers*, 61 N. Y. 34 ; 19 Am. Rep. 244.) "The length of time that a man is at an inn makes no difference, whether he stays a week or a month or longer : so although he is not strictly transient, he retains his character as a traveler," but he may, by a special contract to board and sojourn, make himself a boarder, and being such the innkeeper is not liable. (Story on Bail., § 477 ; 2 Pars. on Contracts, 150, *et. seq.*) The decisions have not been entirely harmonious as to whether fixing in advance the price to be paid and the length of the stay has the effect in law to constitute such person a mere boarder or lodger, and to deprive such visitor of the character of guest. There are numerous decisions in the books of recent date which hold that where there is a special agreement as to time and price that does not absolutely disturb the relationship of innkeeper and guest. (*Pinkerton* v. *Woodward*, 33 Cal. 557 ; *Berkshire Woolen Co.* v. *Proctor*, 7 Cush. 417 ; *Norcross* v. *Norcross*, 53 Me. 169 ; *Walling* v. *Potter*, 35 Conn. 183 ; *McDaniels* v. *Robinson*, 26 Vt. 316 ; see also *Parker* v. *Flint*, 12 Mod. 255.) These cases indicate a tendency in the courts to conform the old rule to the changes made in hotel keeping in modern times.

We are referred by the learned counsel for the appellants to numerous cases to sustain the doctrine he contends for, among which are :    *Vance* v. *Throckmorton* (5 Bush [Ky.], 41); *Manning* v. *Wells* (9 Hump. [Tenn.] 746) ; *Hursh* v. *Byers* (29 Mo. 469) ; *Pollock* v. *Landis* (36 Iowa, 651) ; *Lusk* v. *Belote* (22 Minn. 468), and others. A careful examination of these authorities discloses that in each of them it is very apparent that the relation of landlord and guest did not exist, and that the party who claimed damages of the innkeeper was in every case a boarder beyond any question, and that in most, if not in all of them, there was a special contract as to time and price which established that relationship. None of them are analogous to the case at bar, and in none of them was it made to

appear that the plaintiffs' occupation was of a character which rendered them liable, upon call, to remove from their location and go elsewhere. Besides, the proof shows in all these cases a special contract which could not be terminated, as in the case at bar, at any moment, or which was liable to be concluded by the orders of a higher authority. The cases cited are therefore not in point, and cannot control the decision of the question considered.

It must be borne in mind, in considering the question discussed that the referee refused to find that there was any substantial contract for plaintiff's stay at the hotel and that he found differently and hence it may well be held, in entire harmony with the cases last cited, that the fixing of the price did not change the relationship of the parties as innkeeper and guest. The common-law rule which fixes the liability of an innkeeper to his guest is a salutary one and imposes no needless hardship upon him, and it should be administered according to its spirit without regard to technical distinctions. The statute (Chap. 421, Laws of 1855), was enacted for the benefit of the innkeeper and if complied with furnishes full and ample relief from the liability incurred under the common law. The defendants here failed to comply with the statute by their neglect to conform to its provisions and have no ground to complain when made amenable for such failure. It is no hardship in the law that they are called upon to answer for losses occasioned by their own neglect. It is to be presumed that every innkeeper sufficiently guards the hotel under his charge so as to protect its inmates from the depredations of criminals. When they fail to do this and carelessly omit to notify the inmates where their valuables can be fully protected, no reason exists in the law or in justice why they should not respond for losses attributable to their own remissness. The defendants here were manifestly wrong in failing to comply with the statute cited and as they have not brought themselves within any rule of law which exempts them from the liability incurred by innkeepers generally in their relation to travelers and guests,

we are unable to see why they should be relieved in the case at bar.

The findings of the referee and his refusals to find were clearly right and unless some error exists in the rulings as to the evidence they should be sustained.

We have given due attention to the other questions raised and can discover no ground of error which would authorize a reversal of the judgment.

The judgment should, therefore, be affirmed.

Ruger, Ch. J., Rapallo and Danforth JJ., concur, Andrews, Earl and Finch JJ., dissent.

Judgment affirmed.