A jury trial having been formally waived, the facts were agreed upon, and it was made to appear that, in 1905, the defendants were the proprietors of the Imperial Hotel, where they were running a general public hotel business during the summer as a summer resort, under the firm name of Phillips Sims. While they were so engaged the feme plaintiff stopped at said hotel, under the facts, circumstances, and conditions as set out in her testimony and in the testimony of her husband, and it is agreed that the entire facts in controversy, as they are (367) set out in the following deposition, are admitted by the defendants to be true:
"That on or about 9 August last I was stopping at the Imperial Hotel, in the town of Hendersonville, North Carolina, in Room No. 673. I had been, previous to that time, in Room No. 106, but a few days before the robbery occurred I moved to Room No. 63. On the evening of 9 August, 1905, just before supper-time, I put my purse in my hand satchel, the said purse containing $6 in money, being a $5 bill and a silver dollar. There was also in the purse New York exchange for $30, payable to my order. There was nothing else in the purse of any value. After placing the purse in the hand satchel, I placed the hand satchel in the tray of my trunk, in Room No. 63, in the Imperial Hotel, at Hendersonville, North Carolina. There was also a jewelry case in the tray of the trunk by the hand satchel, then and there, and the jewelry case contained several valuable pieces of jewelry, and, among others, one diamond ring, consisting of a cluster of thirteen diamonds, arranged in the shape of a diamond. With these things in the trunk, I shut the trunk, locked it, then went out of the room, No. 63, and locked the door to it, taking the room key and the trunk key, which I had attached together on a key ring and chain; went downstairs and went to the office of the hotel and delivered the said keys, ring and chain to Mr. H. G. Lawrence, the night clerk then and there in charge of the office of the said hotel, who took charge of the keys. I then went into the dining-room, ate supper, stayed in the dining-room about one-half an hour, and went from there to the front porch, stayed out there until about 9 o'clock, then went to the office and called for my keys, which were delivered to me by the said Mr. H. G. Lawrence. I then went back to my room on a small errand, and came back downstairs, locking the door after me *Page 268 
and bringing the same keys, including the trunk and door keys, in my hand, down into the ballroom, where I remained until about (368) 10:30 o'clock, holding the keys in my hand all the time. I did not participate in the dancing, but remained in my seat as a spectator, and never for one moment parting with the possession of my keys since receiving them from the clerk. After leaving the ballroom, I went back to my room, about 10:30 o'clock, to retire. I unlocked the door which I found locked. I then undressed, after having taken the keys from out the door on the outside and putting the door key in the lock on the inside of my room, locking the same. Just before retiring I opened my trunk, which I found locked just as I had left it locked, in order to get the valuables to put under my pillow. I then discovered that my purse had been stolen from the trunk, containing the $6 and the New York exchange. I then looked into the jewelry case and found the said diamond ring above described had been stolen and taken away from said trunk and room. I never received any notice from any source and saw no notice for me to place my valuables in the safe or elsewhere for safekeeping, until after the loss of my property, when Mr. Phillips informed me of the existence of such notice on the register, when I had informed him of his liability, which was some time after I had informed him of the loss."
On cross-examination the witness said that when she first reached the hotel Mr. Phillips, one of the defendants, agreed to board her at $10 per week, and she was to-stay two or three weeks, but that no agreement was made for any particular time, and after the robbery the witness moved to another place; that witness never deposited any money or valuables in the office of the hotel before the robbery, and was not aware of the fact that it was her duty to do so, and witness never say any card in the room or elsewhere giving notice that this was required, and never said so to defendants or any other persons. It was not shown that any copy of the statute regulating the liability of innkeepers was posted in the plaintiff's room or elsewhere in the hotel (Revisal, (369) ch. 42).
There was an agreement to the effect that, in case defendants were liable for plaintiff's loss, judgment should be entered for $141, with interest from 15 September, 1905.
On the facts stated, the court, being of opinion with plaintiffs, rendered judgment for the amount agreed upon, and defendants excepted and appealed.
Smith Schenck for plaintiffs.
The decisions of this State are to the effect that, in the absence of statutory regulation, the keeper of a public inn, or hotel, which is the modern and more frequently used term, is responsible to his guest for the safety of the latter's goods, chattels, and money, when placed infra hospitium and which he has with him for the purposes of his journey. The proprietor is held to be an insurer to the extent that he must make good to the guest all loss or damage arising from any cause except the act of God or the public enemy, or the fault of the guest himself or his agents or servants. Quinton v. Courtney. 2 N. c., 40; Neal v. Wilcox, 49 N.C. 146. This exacting requirement of the common law, established in a ruder time, from reasons of public policy, in many instances and under modern conditions may operate with great harshness, and the matter has been very generally made the subject of legislation by which the landlord's obligations have been limited, both in kind and amount. It is so with us. Revisal, ch. 42, secs. 1909 et seq. The statute, however (section 1913), itself provides as follows: "Every innkeeper shall keep posted in every room of his house occupied by guests, and in the office, a printed copy of this chapter and of all regulations relating to the conduct of guests. This chapter shall not apply to innkeepers or their guests where the innkeeper fails to keep such notices posted." This provisions not having been (370) complied with by defendants, the principle of the common law obtains; and if, on the facts agreed, the relation between these parties was that of guest and proprietors of a public inn or hotel, defendants are responsible for the loss of the goods.
The counsel for defendants, in his learned argument, contends that the principle stated does not apply to the facts presented here, because, as he insists, they show that his clients were not at the time proprietors of a public inn, but were the keepers of a boarding-house at a summer resort; second, that if this were not true, the plaintiff's position at the time of the loss was not that of guest, but of boarder. And he argues that in either case defendants could only be held responsible for the loss of goods occasioned by the negligence of defendants or their employees, and, no such negligence having been shown or suggested, the recovery had by plaintiff cannot be sustained. The doctrine is sound. The keeper of a boarding-house — that is, one who reserves the right to select and choose his patrons and takes them in only by special arrangement, and usually for a definite time — is not responsible as an insurer, and, even at a public inn or hotel, one who holds the position as a regular boarder or lodger can only hold the proprietor to the exercise of ordinary care on the part of himself and his employees. But we are of opinion that the facts do not bring the present case within the principle. An inn or hotel has been properly defined as a public house of entertainment *Page 270 
for all who choose to visit it. It is this publicly holding a place out as one where all transient persons who may choose to come will be received as guests for compensation that is made the principal distinction between a hotel and a boarding-house in many well considered decisions, and the above definition is given with approval inPinkerton v. Woodard, 33 Cal. 557; Walling v. Porter, 35 Conn. 183, both cases citing the decision of Wintermunte v. Clark, 5 Saunders, 247.
(371) We think the facts in the case agreed bring the defendants' house clearly within the definition. It is so stated in express terms, "that defendants were proprietors of the Imperial Hotel, where they were running a general hotel business during the summer as a summer resort," and the attendant circumstances support this statement, and show, too, that, being a hotel for the general reception and entertainment of all who might choose to come, the position of plaintiff at the time was that of guest, giving her the right, unless the statute on the subject had been complied with, to hold defendants as insurers. A guest is defined as a "transient person who resorts to and is received at an inn for the purpose of obtaining the accommodations which it purports to afford"; whereas a boarder, in reference to the distinction we are discussing, is one who abides at a place. The term carries with it the idea of residence, partaking to some extent of the nature of one's home for the time being. The relation arises by special contract, and usually for a definite time. Thus, in 16 A. E. Enc. (2 Ed.), it is said: "The essential difference between a boarder and a guest at an inn lies in the character in which the party comes — that is, whether he is a transient person or not, and, accordingly, one who stops at an inn as a transient or a guest, with all rights, privileges, and liberties incident to that station. On the other hand, one who seeks accommodation with a view to permanency, as to make the place his home for the time being, is not a guest, but a boarder. The length of his stay, however, is not of itself ordinarily decisive, for he will continue to be a guest as long as he remains in the transitory condition of that relation." An application of these definitions to the facts will clearly establish, as heretofore stated, that the position of feme plaintiff on this occasion was that of guest. She came to the hotel from her home in South Carolina for a short stay; she was a stranger to the parties defendant, and entered as a guest, so far as appears, without any prearrangement as to terms or time, but on the implied invitation (372) held out to the public generally. She was there for no definite time, and, in our opinion, she was transient in every sense of the term and within every reason that gave her the right to the protection on which she insists. And where this is true, all the authorities — *Page 271 
certainly those having the better reason — are to the effect that the mere fact that she was to pay board by the week, or even at a reduced rate, does not alter her position as guest or deprive her of the right to hold defendants as insurers. Fay v. Improvement Co., 93 Cal. 253; Beale v.Posey, 72 Ala. 323.
These facts are entirely different from those which appear inMeacham v. Galloway, 102 Tenn. 415, an authority much relied upon by defendants. In that case McAllester, J., delivering the opinion of the Court, thus stated the facts regarded as essential, upon which the ruling was predicated: "(1) Plaintiff was a neighbor. (2) He came at a fixed rate. (3) He came for a definite time," and specified that he should be located with the families who were regular boarders, and not as transient. And, further on in the opinion, the judge quoted with approval from Horner v. Harvey, 3 New Mex., 197: "When he ceases to be a traveler, or a transient, or a wayfaring man, and takes up apermanent abode, even in an inn, he ceases to be an object of the law's special solicitude, and is no longer a guest, but a boarder; no longer a traveler, but a citizen." As we interpret this authority, it is not in conflict with the decision we make in the case before us. And the same may be said in regard to the case in our own Court of Neal v. Wilcox,supra, some citations from which case are made by counsel as militating against plaintiff's right to recover. That decision involved the question as to whether mules in a drove could be considered as goods and chattels of a guest infra hospitium, and so entitled to the protection belonging to such property. The eminent judge placed his decision on correct grounds, and the comments in his opinion cited by counsel are not relevant to any facts existent here. And as (373) to the doctrine sometimes stated in general terms and referred to by defendants in support of their position that the common-law obligation of landlord does not apply to keepers of hotels at summer resorts and watering places, this general statement is a deduction from decisions on facts widely varying from those presented here.
In Bonner v. Welborn, 7 Ga. 307, this being one of the decisions relied on to support the position, Nesbitt, J., delivering the opinion, after defining an inn, thus refers to the facts of the case before the Court: "Now, under this (it is submitted) correct legal view of innkeepers, was the plaintiff in this case an innkeeper? Was that his business? His business was to rent his houses to families or persons who might contract with him for their occupancy. They are not his guests; they are, beyond dispute, his tenants, and he their landlord. His business was to furnish board, lodging, and attention. But to whom? To the wayfaring world? No. But to persons who might resort to his healthful fountains and salubrious locality for a season — that is, for *Page 272 
the fall and summer months. They were not his guests for a day, or night, or week, but his lodgers or boarders for a season." Thus it will be seen that this doctrine, insisted on by defendants in reference to keepers of hotels at summer resorts and watering places, applies only to boarding-houses proper at such places, and exists by reason of the fact that the persons received were taken by express arrangements for entertainment and at a certain rate, and usually for a protracted stay, and does not and was never intended to apply to one who conducted, as in this instance, a general hotel business. Such a house of public entertainment does not lose its character as such by reason of its being located either at a summer resort or a watering place. The views we have expressed, and which we hold to be controlling, will be found approved and sustained in well considered decisions of other courts of supreme jurisdiction. Washington v. Johnston, 4 Wn. 393; Beale v.(374) Posey, 72 Ala., supra; Pinkerton v. Pike, 100 Mass. 495; Norcross v. Norcross, 53 Me. 163; Hancock v. Rand, 94 N.Y. 1;Palace Car Co. v. Lowe, 28 Neb. 239, reported also in 6 L.R.A., 809, and generally in 16 A. E. Enc., supra; 22 Cyc., 1069 et seq.; Beale on Hotels and Innkeepers, etc. These authorities are decisive against the defendants' position and establish that the judge below made a correct ruling in holding that defendants were responsible for plaintiff's loss.
There is no error, and the judgment of the court below for the amount agreed is
Affirmed.
Cited: S. v. McRae, 170 N.C. 713.